REDACTED VERSION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROEST

21-1695C
(Judge Richard A. Hertling)

BLUE ORIGIN FEDERATION LLC,
Plaintiff,

v.

THE UNITED STATES,
Defendant,

and

SPACE EXPLORATION TECHNOLOGIES CORP.,
Defendant-Intervenor.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPLETE THE ADMINISTRATIVE RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

ALLISON M. GENCO                    ANTHONY F. SCHIAVETTI
BRIAN M. STANFORD                   Senior Trial Counsel
Senior Attorney Advisors            U.S. Department of Justice
NASA Office of the General Counsel  Civil Division
                                    Commercial Litigation Branch
                                    PO Box 480, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel: (202) 305-7572
                                    Fax: (202) 305-1571
                                    anthony.f.schiavetti@usdoj.gov

September 16, 2021                  Attorneys for Defendant

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUE ................................................................................................2

STATEMENT OF THE CASE ...............................................................................................2

ARGUMENT ...........................................................................................................................3

    I.     Legal Standards ................................................................................................3

        A.  The Contents Of The Administrative Record ...........................................3

          1.  The Scope Of The Administrative Record ...........................................3

          2.  Deliberative Materials Are, As A Matter Of Law, Not Part Of
              The Administrative Record .......................................................................5

          3.  Drafts And Similar Documents, Such As Individual Evaluator Notes,
              Are Not Part Of The Administrative Record Unless They Constitute
              A Concrete Step In The Evaluation Process .......................................10

        B.  Standard For A Motion To Complete The Administrative Record ...........................12

    II.    The Administrative Record Is Complete ................................................................13

        A.  The Administrative Record Is Complete With Regard To NASA
             Communications Related To NASA Requirements Related To Flight
             Readiness Reviews (FRRs) And Otherwise .........................................14

        B.  The Administrative Record Is Complete With Regard To Internal
             Emails, Responses, And Other Communications Between The SSA
             And Senior Advisors Or SSO Members Related To The SSA's
             Evaluation of SpaceX's Proposal .........................................................19

        C.  The Administrative Record Is Complete With Regard To Individual
             Evaluator Documents And Other Materials Relating To The
             Individual Proposal Evaluations ...........................................................22

        D.  The Administrative Record Is Complete With Regard To Read-
             Ahead Materials .......................................................................................26

    CONCLUSION .......................................................................................................................27

**TABLE OF AUTHORITIES**

Cases

*Ad Hoc Metals Coalition v. Whitman*,
227 F. Supp. 2d 134 (D.D.C. 2002) ................................................................ 8

*Advanced Data Concepts, Inc. v. United States*,
216 F.3d 1054 (Fed. Cir. 2000) ..................................................................... 3

*ARKRAY USA, Inc. v. United States*,
117 Fed. Cl. 22 (2014) ................................................................................ 17

*ARKRAY USA, Inc. v. United States*,
No. 14-233C, 2014 WL 2905127 (Fed. Cl. Apr. 28, 2014) ................................ 17

*Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*,
631 F. Supp. 2d 23 (D.D.C. 2009) .................................................................. 9

*Beta Analytics Int'l, Inc. v. United States*,
67 Fed. Cl. 384 (2005) ............................................................................... 11

*Bimini Superfast Operations LLC v. Winkowski*,
994 F. Supp. 2d 103 (D.D.C. 2014) ............................................................... 12

*Blue Ocean Inst. v. Gutierrez*,
503 F. Supp. 2d 366 (D.D.C. 2007) ............................................................ 9, 24

*Camp v. Pitts*,
411 U.S. 138 (1973) ..................................................................................... 6

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) .................................................................................. 4, 5

*Cubic Applications, Inc. v. United States*,
37 Fed. Cl. 339 (1997) .................................................................................. 3

*Cygnus Corp., Inc. v. United States*,
72 Fed. Cl. 380 (2006) ............................................................................... 10

*Georgia Aquarium, Inc. v. Pritzker*,
134 F. Supp. 3d 1374 (N.D. Ga. 2014) .......................................................... 12

*Great Am. Ins. Co. v. United States*,
   No. 12 C 9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013)................................ 12

*Gulf Gp. Inc. v. United States*,
   61 Fed. Cl. 338 (2004) ................................................................. 7, 10, 12

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
   238 F.3d 1324 (Fed. Cir. 2001)................................................................ 4, 6

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998)................................................................ 6, 8

*In re U.S. Dep't of Def. & U.S. Envtl. Prot. Agency Final Rule*,
   No. 15-3751, 2016 WL 5845712 (6th Cir. Oct. 4, 2016) ........................................... 6

*Interspiro, Inc. v. United States*,
   72 Fed. Cl. 672 (2006) ..................................................................... 10

*Joint Venture of Comint Sys. Corp. v. United States*,
   100 Fed. Cl. 159 (2011) ................................................................... 4, 5, 7

*Lyon Shipyard, Inc. v. United States*,
   113 Fed. Cl. 347 (2013) ................................................................... 12, 23

*Madison Cnty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
   622 F.2d 393 (8th Cir. 1980) .................................................................. 9

*Madison Servs., Inc. v. United States*,
   92 Fed. Cl. 120 (2010) ...................................................................... 5, 6

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)........................................................................... 4

*National Courier Ass'n v. Board of Governors*,
   516 F.2d 1229 (D.C. Cir. 1975)............................................................... 8, 11

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975).......................................................................... 8

*Norris & Hirshberg v. SEC*,
   163 F.2d 689 (D.C. Cir. 1947)................................................................. 7

*Oceana, Inc. v. Locke*,
   634 F. Supp. 2d 49 (D.D.C. 2009).............................................................. 10

*Oceana, Inc. v. Pritzker*,
  217 F. Supp. 3d 310 (D.D.C. 2016) ....................................................................... 10

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ................................................................... *passim*

*Pitney Bowes Gov't Solutions, Inc. v. United States*,
  93 Fed. Cl. 327 (2010) ....................................................................................... 12

*Poplar Point RBBR, LLC v. United States*,
  145 Fed. Cl. 489 (2019) ..................................................................................... 13

*Safari Club Int'l v. Jewell*,
  111 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................... 13

*Safari Club Int'l v. Jewell*,
  No. CV-16-00094-TUC-JGZ, 2016 WL 7785452 (D. Ariz. Jul. 7, 2016) .................... 4, 12, 13

*San Luis Obispo Mothers for Peace v. United States Nuclear Regulatory Commission*,
  789 F.2d 26 (D.C. Cir. 1986) ........................................................................... 5, 8

*Sara Lee Corp. v. American Bakers Ass'n*,
  252 F.R.D. 31 (D.D.C. 2008) ......................................................................... 13, 20

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) .............................................................................................. 4

*Software Eng'g Servs., Corp. v. United States*,
  85 Fed. Cl. 547 (2009) ......................................................................................... 3

*Stand Up for California! Dep't of Interior*,
  71 F. Supp. 3d 109 (D.D.C. 2014) ..................................................................... 10

*Tafas v. Dudas*,
  530 F. Supp. 2d 786 (E.D. Va. 2008) ......................................................... *passim*

*Tauri Grp., LLC v. United States*,
  99 Fed. Cl. 475 (2011) ................................................................................ *passim*

*Tech Systems, Inc. v. United States*,
  98 Fed. Cl. 228 (2011) ............................................................................. 11, 23, 24

*Telos Corp. v. United States*,
  129 Fed. Cl. 573 (2016) ....................................................................................... 7

*Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers v. Fed. R.R. Admin.*,-- F.4th --, 2021 WL 3700447 (D.C. Cir. 2021) ....................... 13

*United States v. Morgan*,
304 U.S. 1 (1938)........................................................................................................... 4

*United States v. Morgan*,
313 U.S. 409 (1941)............................................................................................... 4, 6, 7

*USfalcon, Inc. v. United States*,
92 Fed. Cl. 436 (2010)................................................................................................ 25

*WildEarth Guardians v. Salazar*,
670 F. Supp. 2d 1 (D.D.C. 2009)................................................................................ 13

<u>Statutes</u>

5 U.S.C. § 706 ................................................................................................................ 3

28 U.S.C. § 1491(b)(4) .................................................................................................. 3

31 U.S.C. § 3556............................................................................................................ 22

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| BLUE ORIGIN FEDERATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | No. 21-1695C |
| | ) | (Judge Richard A. Hertling) |
| Defendant, | ) | |
| and | | |
| SPACE EXPLORATION TECHNOLOGIES | ) | |
| CORP., | | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

Pursuant to Rule 7(b) of the Rules of the United States Court of Federal Claims and this Court's order dated August 27, 2021 (ECF No. 30), defendant, the United States, respectfully responds to the motion to complete the administrative record filed by plaintiff, Blue Origin Federation, LLC (Blue Origin), ECF No. 37.

In its motion, Blue Origin requests the addition of four broad categories of documents that it believes should have been included in the administrative record in this case. Blue Origin, however, fails to meet its heavy burden to rebut the strong presumption that the administrative record is properly designated and complete, and has not demonstrated by clear evidence that the documents it seeks are properly part of the administrative record.

In particular, Blue Origin's requests reflect a fundamental misunderstanding of the scope of the administrative record and the nature of judicial review of agency action. It is a basic tenet of law that review of an agency action is based on the agency's stated reasons for its decision and

that, except in extraordinary circumstances, it is beyond the power of courts to probe the agency's mental processes.  For that reason, a wide variety of courts have made clear that internal, predecisional, deliberative agency documents are not properly part of an administrative record as a matter of law, as they are immaterial to the scope of judicial review of agency action. Blue Origin's requests that such materials be added to the administrative record, therefore, are not well founded and should be denied.

## STATEMENT OF THE ISSUE

Whether Blue Origin has met its heavy burden to rebut the strong presumption that the administrative record is properly designated and complete, and to demonstrate by clear evidence that the documents it seeks to add to the administrative record are necessary to complete the administrative record.

## STATEMENT OF THE CASE

Blue Origin is challenging the decision of the National Aeronautics and Space Administration (NASA) to award a contract to Space Exploration Technologies Corp. (SpaceX), and not to award a contract to Blue Origin, in conjunction with NASA's procurement for a lunar Human Landing System (HLS) under Option A to Appendix H of Broad Agency Announcement (BAA) Number NNH19ZCQ001K.  Pursuant to the Court's orders, on September 7, 2021, the United States filed the administrative record in this case, under seal, on a series of Digital Versatile Disks (DVDs).

████████████████████████████

The administrative record the United States filed comprises more than 135,000 pages and more than 1,750 individual files.  It was certified as complete by the contracting officer on September 3, 2021.[1]

On September 10, 2021, Blue Origin filed a motion to "complete" the administrative record with four categories of documents it alleges should have been included as part of the administrative record (Pl. Mot.).  As we demonstrate below, Blue Origin's motion is not well-founded, and we respectfully request that the Court deny it.

## ARGUMENT

**I.**     **Legal Standards**

    **A.**     **The Contents Of The Administrative Record**

        **1.**     **The Scope Of The Administrative Record**

By statute, bid protests in this Court are subject to the Administrative Procedure Act (APA) standard of review.  28 U.S.C. § 1491(b)(4).  Accordingly, review is based upon an administrative record, *see* 5 U.S.C. § 706, which generally includes "all the material that was developed and considered by the agency in making its decision."  *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (citation omitted); *see also, e.g.*, *Software Eng'g Servs., Corp. v. United States*, 85 Fed. Cl. 547, 552-53 (2009); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (describing the administrative record in a

---

[1]  Although the record was not filed with the Court until September 7, 2021, it was completed on September 3, 2021, and certified as complete on that date.  The time required to process pagination of the record made filing the paginated record on that date impossible.  Def. Mot. for Enlargement, ECF No. 31.  However, we provided copies that were complete, though not fully paginated, to the parties in the early morning hours of September 4, 2021.  *Id,*; Pl. Mot. at 7.

post-award protest as "the record before the decision maker at the time of the final award").  This

includes all documents that were "directly or indirectly considered by the agency decision-

makers[.]"  *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168–69 (2011)

(citation omitted).  "Documents and materials indirectly considered by agency decision-makers

are those that may not have literally passed before the eyes of the decision-makers, but were 'so

heavily relied on in the recommendation that the decision maker constructively considered'

them."  *Safari Club Int'l v. Jewell*, No. CV-16-00094-TUC-JGZ, 2016 WL 7785452, at *2 (D.

Ariz. Jul. 7, 2016) (citation omitted).

　　　The scope of the administrative record is bounded by the proper scope of administrative

review.  It is long settled that agency action should be judged on the basis of the agency's stated

reasons for its decision.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("confining our

review to a judgment upon the validity of the grounds upon which the Commission itself based

its action"); *see also Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins.

Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at

all, on the basis articulated by the agency itself."); *Burlington Truck Lines, Inc. v. United States*,

371 U.S. 156, 169 (1962).  It is "not the function of the court to probe the mental processes" of

the agency.  *United States v. Morgan*, 304 U.S. 1, 18 (1938) (*Morgan I*).  "Just as a judge cannot

be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally

respected."  *United States v. Morgan*, 313 U.S. 409, 422 (1941) (*Morgan II*).  Accordingly,

"[s]uch inquiry into the mental processes of administrative decisionmakers is usually to be

avoided."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also

Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir.

2001) (permitting supplementation of the administrative record with a deposition of a contracting officer, while making clear that it was not "ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision," because "[s]uch inquiries are inappropriate.") (citation omitted).

Where, as here, administrative findings (such as the final Source Evaluation Panel (SEP) Reports and Source Selection Statement) are made at the time of the decision and have been included in the administrative record, *Overton Park* provides that "there must be a strong showing of bad faith or improper behavior before such inquiry [into mental processes] may be made." *Citizens to Preserve Overton Park*, 401 U.S. at 420; *see also Comint*, 100 Fed. Cl. at 169 (citation omitted); *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 (2010) ("allegations of bad faith must be based on hard facts in order to justify . . . supplementation of the administrative record.") (citation and quotation marks omitted).  Blue Origin has made no allegation of bad faith or improper behavior here, much less met the high bar required to support such an allegation.

### 2.  Deliberative Materials Are, As A Matter Of Law, Not Part Of The Administrative Record

Applying these principles, the Court of Appeals for the D.C. Circuit, sitting *en banc*, has examined in depth the question of whether deliberative materials are properly part of an administrative record, concluding that, because such materials are outside the scope of APA review, they are not part of an administrative record.  In *San Luis Obispo Mothers for Peace v. United States Nuclear Regulatory Commission*, 789 F.2d 26, 44-45 (D.C. Cir. 1986), the D.C. Circuit considered a motion to supplement the administrative record with transcripts of a closed-door meeting of the Nuclear Regulatory Commission to discuss the license application whose

approval the petitioners were challenging.  The court rejected that effort, stating that "[j]udicial

examination of these transcripts would represent an extraordinary intrusion into the realm of the

agency" because they "record the frank deliberations of Commission members engaged in the

collective mental processes of the agency." *Id*.  The court made clear that such an analysis of

mental processes would be improper, analogizing an agency's deliberations to the deliberative

processes of a court, stating that, "[w]ithout the assurance of secrecy, the court could not fully

perform its functions." *Id*.  The D.C. Circuit has subsequently reiterated that "the actual

subjective motivation of agency decisionmakers is immaterial as a matter of law" under APA

review. *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d

1279, 1279-80 (D.C. Cir. 1998) (denial of reh'g en banc) (citing, *inter alia*, *Overton Park*, 401

U.S. at 420; *Camp v. Pitts*, 411 U.S. 138 (1973); *Morgan II*, 313 U.S. at 409); *see also Oceana,

Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("[A]bsent a showing of bad faith or improper

behavior, '[a]gency deliberations not part of the record are deemed immaterial.'") (citation

omitted) (second alteration in original); *In re U.S. Dep't of Def. & U.S. Envtl. Prot. Agency Final

Rule*, No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) ("Deliberative process

materials are generally exempted from inclusion in the record in order to protect the quality of

agency decisions by ensuring open and candid communications."); *Madison Cnty. Bldg. & Loan

Ass'n v. Fed. Home Loan Bank Bd.*, 622 F.2d 393, 395 n.3 (8th Cir. 1980) ("Although [internal

staff memoranda and recommendations] may have been used by an agency in reaching a

decision, they may be excluded from the record because of concerns over proper agency

functioning.").

The Court of Appeals for the Federal Circuit has likewise made clear that inquiry into the deliberations and mental processes of Government officials is inappropriate under APA review, including in bid protest cases.  In *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001), a bid protest case, the Federal Circuit was faced with an agency decision for which there was no rationale documented in the record.[2]  *Id.* at 1337-39. Because of this gap in the record, the Court permitted supplementation of the administrative record with a deposition of the contracting officer.  *Id.* at 1339.  In doing so, however, the Court made clear that it was "not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision," because "[s]uch inquiries are inappropriate."  *Id.* (citing *Morgan II*, 313 U.S. at 422).   This Court, likewise, has reached the same conclusion.  *See, e.g.*, *Comint*, 100 Fed. Cl. at 169 ("internal deliberative materials . . . are generally excluded from the record."); *Gulf Gp. Inc. v. United States*, 61 Fed. Cl. 338, 347 (2004) *abrogated in part on other grounds as recognized by Telos Corp. v. United States,* 129 Fed. Cl. 573, 576 n.2 (2016) (explaining that the Court had not granted discovery of "draft documents and internal communications.").

Of the great many district courts cases that have had occasion to further examine the issue, one of the most frequently cited, owing to its detailed analysis, is *Tafas v. Dudas*, 530 F. Supp. 2d 786 (E.D. Va. 2008).  In *Tafas*, the court noted that "the D.C. Circuit long ago held that 'internal memoranda made during the decisional process ... are never included in a record.'"  *Id.* at 794 (citing *Norris & Hirshberg v. SEC,* 163 F.2d 689, 693 (D.C. Cir. 1947)).  It held that

---

[2]  This is in stark contrast to this case, where the voluminous record contains extensive explanation of the final, detailed rationale supporting the agency decision at issue.

"Instead, 'only the pleadings and the evidence constitute the record upon which the decision must be based,' and '[b]riefs, and memoranda made by the [agency] or its staff, are not parts of the record.'" *Id.* (citation, collecting cases, omitted). "Only if internal agency documents themselves introduce 'factual information not otherwise in the record' must those portions of the documents be included in the administrative record." *Id.* (citing *National Courier Ass'n v. Board of Governors,* 516 F.2d 1229, 1242 (D.C. Cir. 1975)).

The court went on to explain the reasons undergirding the exclusion of deliberative materials from the administrative record. *Id.* "First, judicial review of agency action 'should be based on an agency's stated justification, not the predecisional process that led up to the final, articulated decision,'" and "the 'actual subjective motivation of agency decisionmakers is irrelevant as a matter of law.'" *Id.* (quoting *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 143 (D.D.C. 2002) and *In re Subpoena Duces Tecum,* 156 F.3d 1279, 1279 (D.C. Cir. 1998), respectively). "Second, excluding deliberative materials 'prevent[s] injury to the quality of agency decisions' by encouraging uninhibited and frank discussion of legal and policy matters.'" *Id.* (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–52 (1975)). "Requiring the inclusion of deliberative materials in the administrative record would pressure agencies to conduct internal discussions with judicial review in mind, rendering 'agency proceedings ... useless both to the agency and to the courts.'" *Id.* (quoting *San Luis Obispo Mothers for Peace*, 789 F.2d at 44-45). Based on this rationale, the court declined to require that additional material be added to the administrative record, because "any evidence of [the agency's] 'internal struggle' or its deliberative 'spade work' is irrelevant," and such evidence is

"immaterial as a matter of law and need not be included in the administrative record."  *Id*. at 796-97.

It is important to distinguish here that deliberative materials are not part of the administrative record as a matter of law, because their examination is, by definition, outside the scope of APA review.  Therefore, although these materials may qualify for protection under the deliberative process privilege, no assertion of privilege is necessary to support the exclusion of these materials from the administrative record, because they are "not properly part of the administrative record in the first place."  *Id*. at 801 ("it would be 'unfair to criticize [the USPTO] for not claiming a privilege and filing a privilege log as to documents that it claims should not be in the administrative record in the first place.'") (quoting *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 n.4 (D.D.C. 2007)).[3]  District courts within the D.C. Circuit have adhered to the same reasoning in decisions rebuffing efforts by plaintiffs to require the preparation of a privilege log specifically identifying withheld deliberative materials.  *See, e.g.*, *National Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*, 631 F. Supp. 2d 23, 27

---

[3]  In *Blue Ocean Institute*, the court further explained that "production of the materials [plaintiff] seeks would transform the process of judicial review of administrative decisions greatly," because "[t]he agency would have to collect all internal communications among agency officials pertaining to the claimed deficiency, catalogue them, and claim the deliberative process privilege where appropriate, which may be as to all of them."  503 F. Supp. 2d. at 372.  In addition to the burden on the agency, the court noted the impact on the process, explaining that [t]he privilege question would have to be resolved before judicial review of the administrative decision could even begin."  The court declined to require such an enormous "new burden on the agency, the parties and the court" absent "a clear command from the court of appeals, particularly in light of the unequivocal statement by that court that such materials are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious."  *Id*.

(D.D.C. 2009); *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52-53 (D.D.C. 2009) (collecting cases), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011); *Stand Up for California! v. Dep't of Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014) ("[P]rivileged and deliberative materials are not part of the administrative record as a matter of law."); *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 320 (D.D.C. 2016), *aff'd sub nom. Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019) ("The Court is also mindful that requiring all predecisional and deliberative documents to be logged in a *Vaughn*–type index would place a significant burden on agencies whose decisions are challenged as arbitrary and capricious.").  Although we acknowledge that in some cases, including those Blue Origin cites, Pl. Mot. at 19, courts have required the preparation of some form of a privilege log in some APA cases, that practice certainly is not "generally required" as Blue Origin alleges, and the greater weight of authority rejects such a requirement as inconsistent with the principles of APA review.

   3.   **Drafts And Similar Documents, Such As Individual Evaluator Notes, Are Not Part Of The Administrative Record Unless They Constitute A Concrete Step In The Evaluation Process**

   Based on the foundations discussed above regarding the proper scope of the administrative record, courts have provided further operational guidance on types of documents that should and should not generally be included in an administrative record.  For example, drafts and internal e-mails are examples of deliberative documents that are typically excluded from the administrative record.  *See, e.g.*, *Interspiro, Inc. v. United States*, 72 Fed. Cl. 672, 674 n.2 (2006); *Gulf Grp. Inc. v. United States*, 61 Fed. Cl. at 347.  Internal e-mails, however, should be included in the administrative record where they are not deliberative, but rather memorialize decisions at issue in the litigation.  *See Cygnus Corp., Inc. v. United States*, 72 Fed. Cl. 380, 384

(2006). Internal e-mails, or portions thereof, should also be included in the record where the e-mail message transmits factual information not otherwise in the record that was considered by the decision maker. *See Tafas*, 530 F. Supp. 2d at 794 ("Only if internal agency documents themselves introduce 'factual information not otherwise in the record' must those portions of the documents be included in the administrative record.") (quoting *Nat'l Courier Ass'n v. Bd. of Governors*, 516 F.2d 1229, 1242 (D.C. Cir. 1975)).

Much like drafts, this Court has, on multiple occasions, addressed whether it is necessary to include in the administrative record other interim documents created as part of the evaluation process, such as informal notes, drafts, and worksheets prepared by individual evaluators or other members of an agency procurement team. Contrary to Blue Origin's assertions, these documents are properly included in the administrative record only in limited circumstances. Blue Origin relies primarily on the decision of this Court in *Tauri Grp., LLC v. United States*, 99 Fed. Cl. 475 (2011); Pl. Mot. at 4, 17-18, 23, 28. In *Tauri*, the Court found that final versions of individual evaluator worksheets that were relied upon by the source selection authority (SSA) were necessary for effective judicial review in that case. *Tauri*, 99 Fed. Cl. at 481-82. The Court in that case cited the decision of the same Judge in *Tech Systems, Inc. v. United States*, 98 Fed. Cl. 228, 246 (2011), in which the Court held that, in a case where the SSA chooses to rely entirely on the individual evaluations of technical team members, their rating sheets should be included in the record. *Id*. (citing *Beta Analytics Int'l, Inc. v. United States,* 67 Fed. Cl. 384, 397 (2005)). "On the other hand, when technical evaluations are reached by consensus, the views of any individual evaluators are not directly connected to the SSA's decision, making their worksheets less likely sources of support for the proposition that the decision was arbitrary." *Tech Sys.*, 98

Fed. Cl. at 246.  Therefore, "whether the papers of individual evaluators should even be part of the administrative record will depend on whether the evaluation process included the concrete step of individual evaluations, the records of which must be maintained, . . . or instead used evaluation ratings which from the start were the products of conference and consensus—in which case any individual's notes are more akin to drafts that may be excluded."  *Id*. (citing *Gulf Grp.,* 61 Fed. Cl. at 347–48; *Overton Park,* 401 U.S. at 420; *Impresa,* 238 F.3d at 1339) (internal citation to *Pitney Bowes Gov't Solutions, Inc. v. United States,* 93 Fed. Cl. 327, 334–36 (2010) omitted as indicated).  Similarly, in *Lyon Shipyard, Inc. v. United States*, 113 Fed. Cl. 347 (2013), the Court "did not require defendant to file, as part of the administrative record, the notes of individual agency employees associated with this procurement,"  finding that in that case, "the evaluation process . . . did not include the concrete step of individual evaluations, rendering the individual's notes . . . more akin to drafts that may be excluded from the administrative record."  *Id*. at 353 n.4 (citing *Tech. Sys.,* 98 Fed. Cl. at 246; *Tauri Grp.,* 99 Fed. Cl. at 481) (alterations omitted).

**B.**     **Standard For A Motion To Complete The Administrative Record**

Courts have recognized that an agency is entitled to a "strong presumption of regularity" in designating its administrative record, absent clear evidence to the contrary.  *E.g.*, *Safari Club*, 2016 WL 7785452, at *2; *Georgia Aquarium, Inc. v. Pritzker*, 134 F. Supp. 3d 1374, 1377 (N.D. Ga. 2014) (citation omitted); *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014) (citation omitted); *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *4 (N.D. Ill. Aug. 23, 2013) (citation omitted); *see also, e.g.*, *Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers v. Fed.*

12

*R.R. Admin.*, -- F.4th --, 2021 WL 3700447, at *6 (D.C. Cir. 2021) ("designation of the Administrative Record . . . is entitled to a presumption of administrative regularity.") (citation omitted); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) ("Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness").

"Plaintiffs bear a 'heavy burden' in seeking to overcome this presumption in order to supplement the record." *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 4 (D.D.C. 2015) (citing *WildEarth Guardians v. Salazar,* 670 F. Supp. 2d 1, 6 (D.D.C. 2009)).  In alleging that the administrative record is incomplete, a plaintiff "cannot merely assert that other relevant documents were before the [decision-making body] but were not adequately considered. . . . Instead, a plaintiff 'must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.'"  *Sara Lee Corp. v. American Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008) (citations omitted); *see also, e.g.*, *Safari Club*, 2016 WL 7785452, at *2 ("A court should . . . be cautious against permitting the admission of 'any relevant document contained in the agency's filing cabinet.'") (citation omitted).  As discussed above, this heavy burden stems from the proper scope of judicial review under the APA.  *Safari Club*, 111 F. Supp. 3d at 4 (citations omitted).

## II.   <u>The Administrative Record Is Complete</u>

The administrative record that the United States has filed in this case is complete.  Blue Origin seeks a broad yet amorphous swath of additional documents that it speculates may exist, but does not come close to carrying its "heavy burden" to overcome the "strong presumption" that the administrative record designated by the agency is complete.  *E.g.*, *Safari Club*, 111 F.

████████████████████████████████

Supp. 3d at 4 (citations omitted).  Blue Origin divides its requests for additional material into

four broad categories of documents.  Pl. Mot at 20.  We address each in turn below.

A.  **The Administrative Record Is Complete With Regard To NASA Communications Related To NASA Requirements Related To Flight Readiness Reviews (FRRs) And Otherwise**

In the first category of documents it seeks, Blue Origin insists that the administrative

record needs to include unspecified "internal NASA emails regarding NASA's understanding or

application of the original FRR requirement during the evaluation or award process," as well as

unspecified "internal NASA emails discussing the new modified and relaxed FRR requirement

language crafted specifically and only for SpaceX."  Pl. Mot. at 21.  As to the former, the

administrative record already contains all of the documents that memorialize NASA's

understanding or application of the solicitation's FRR requirement, and Blue Origin fails to meet

its heavy burden to demonstrate otherwise.  With regard to the latter category, Blue Origin seeks

nonexistent documents in support of its theory of the case.  Indeed, the absence of such

documents where Blue Origin speculates they must have existed if its theory were true serves to

persuasively refute Blue Origin's theory of the case, as we shall demonstrate briefly here and in

more detail in merits briefing to come later in this case.

The administrative record is complete with regard to documentation of "NASA's

understanding or application of the original FRR requirement during the evaluation or award

process."  Indeed, the word "original" is superfluous in that sentence, as neither NASA's

understanding nor its application of the FRR requirement has changed during the course of this

procurement.  Setting that aside, however, as Blue Origin acknowledges, the administrative

record contains the documentation of NASA's assessment of a weakness for SpaceX with regard

14

█████████████████████████████████████

to its originally proposed approach's inclusion of only a single FRR two weeks prior to the launch of its HLS Starship.  Pl. Mot. at 21-22; AR Tab 59c at 62812-14.  The administrative record further contains a letter from NASA opening post-selection negotiations with SpaceX, and which discusses NASA's assessment of SpaceX's proposal with regard to the solicitation's FRR requirement.  AR Tab 63 at 62886, 62888-90.  The administrative record also contains SpaceX's revised proposal in response to NASA's post-selection negotiation letter, AR Tab 68, as well as NASA's source selection statement explaining its decision to select SpaceX for award of an HLS Option A contract, AR Tab 77.  These documents contain NASA's full, final rationale for its assessment of SpaceX's proposal with regard to FRRs, or in other words its application of its understanding of the solicitation's FRR requirements to SpaceX's proposal.  The administrative record on this issue, therefore, is complete.

Blue Origin alleges that the administrative record should also include "internal NASA emails regarding NASA's understanding or application of the original FRR requirement during the evaluation or award process," such as "any emails or other communications among, between or including the [Technical Evaluation sub-Panel], [Management Evaluation sub-Panel], or [Price Evaluation sub-Panel] regarding the FRR requirement during the evaluation process, which served as the basis for the SEP report materials provided to the SSA."  Pl. Mot. at 21.  As we have explained above, any such documents in existence are immaterial as a matter of law, and not properly part of the administrative record.  *See Oceana*, 920 F.3d at 865 ("[A]bsent a showing of bad faith or improper behavior, '[a]gency deliberations not part of the record are deemed immaterial.'") (second alteration in original); *Tafas*, 530 F. Supp. 2d at 796-97 ("[A]ny evidence of [the agency's] 'internal struggle' or its deliberative 'spade work' is irrelevant," and

such evidence is "immaterial as a matter of law and need not be included in the administrative record.") (citation omitted).

The cases on which Blue Origin relies are not to the contrary. In *Tauri*, the Court stated that individual evaluator worksheets need only be included in the administrative record when they are either "binding on an SSA" or when individual evaluations "were a concrete step in the technical evaluation process." *Tauri*, 99 Fed. Cl. at 481 (citations omitted). In that case, the Court found that individual worksheets documenting the findings of individual evaluators constituted a concrete step. *Id*. at 481-82.

Here, by contrast, individual evaluators did not complete any worksheets that were provided to the SSA for her review. Instead, individual evaluators were part of a larger team approach, and did not create any documentation that was presented to the SSA. AR Tab 35 at 61921-24. Individual evaluators did complete concrete steps in analyzing proposals for compliance with administrative proposal requirements, and we included such documents in the administrative record. *See, e.g*., AR Tab 36. Otherwise, documentation created by individual evaluators were internal, predecisional, deliberative material, akin to drafts of the final SEP Report, which is included in the administrative record. AR Tab 77.

Indeed, NASA's evaluation plan expressly stated that "[o]nly the final brief and SEP report given to the SSA will become a part of the official record of this procurement." AR Tab 35 at 61923; *see also* AR Tab 77 at 63038 ("To *fully* document its work, the SEP produced a report for each offeror containing all of the SEP's findings, ratings, and other evaluative content."). It also makes clear that the "deliberative spade work" compiled in the early stages of evaluation by individual evaluators was never seen or considered by the SSA. *Id*. at 61921-24.

Instead, the SSA made her decision independently, based on her own "independent analysis and judgment," AR Tab 77 at 63038, as well as on the final SEP reports, which she "thoroughly reviewed" and "fully concurred with" subsequent to her "consideration of each proposal on its own independent merits." *Id*. at 63043.

In *ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127 (Fed. Cl. Apr. 28, 2014), the Court ordered the addition of certain internal agency communications to the administrative record to fill a gap in the record regarding the compliance of the awardee's proposal with certain solicitation requirements. *Id*. at *1. Unlike here, the record in that case did not include documented final conclusions of the agency with regard to whether and to what extent the awardee's proposal complied with the requirement in question. *ARKRAY USA, Inc. v. United States*, 117 Fed. Cl. 22, 28 (2014). Instead, the plaintiff in that case alleged that the agency had failed to properly evaluate whether the awardee could comply with the requirement in question. *Id*. Here, NASA final determinations regarding SpaceX's compliance with the solicitation's FRR requirements are included in the administrative record, as described above. No gap in the record exists, and no addition of predecisional, deliberative materials is necessary. Indeed, the Court in *ARKRAY* denied the plaintiff's request for the addition of other internal agency communications to the record where final documents showing the agency's determination were present in the record, and "th[o]se documents speak for themselves." 2014 WL 2905127 at *1 n.3.

Blue Origin also seeks "internal NASA emails discussing the new modified and relaxed FRR requirement language crafted specifically and only for SpaceX." Pl. Mot. at 21. But this is not a set of actual documents in existence, but rather a category of theoretical documents that

17

██████████████████████████████████

Blue Origin alleges should exist, based on its theory of the case that NASA waived its FRR

requirements for SpaceX only.  NASA disagrees with this theory and maintains, including in the

previous protest before the Government Accountability Office, that it did not waive the FRR

requirement for SpaceX.  *See, e.g*, AR Tab 108b55 at 104626-32, Tab 108b61 at 104859-70.  As

such, it should not be a surprise that there are no internal documents discussing how and why to

waive solicitation requirements for SpaceX, since NASA maintains that it did no such thing.

Indeed, as we anticipate discussing at greater length in our forthcoming merits briefing, the

absence of such documents persuasively refutes Blue Origin's theory of the case – while actual

waiver of a solicitation requirement may well have generated documented analysis, the lack of

such documentation serves to demonstrate that no such waiver occurred.

Moreover, we note that Blue Origin's theory largely stems from its (incorrect)

interpretation of NASA's evaluation of SpaceX's proposal, as well as the letter that NASA sent

to SpaceX opening post-selection negotiations.  *See* AR Tab 59c at 62812-14, Tab 63 at 62886,

62888-90.  These documents, of course, are already contained within the administrative record.

To the extent that Blue Origin intends to continue to pursue its interpretation of these documents

as a waiver of solicitation requirements, the record already contains the documents on which

Blue Origin relies, and is complete.

Finally, the same is true of Blue Origin's (incorrect) allegations that ████████████

█████████████████████████████████.  Pl. Mot. at 22.  These

allegations are an outgrowth of Blue Origin's FRR allegations and, as such, are based on the

same flawed interpretation of the solicitation's terms.  It is no surprise that the administrative

record contains no documents discussing waiver of these requirements for SpaceX or a failure of

SpaceX's proposal to meet these requirements, because NASA did not waive any of these requirements for SpaceX.  The administrative record is complete with regard to these requirements and NASA's assessment of SpaceX's proposal against them.

> **B.      The Administrative Record Is Complete With Regard To Internal Emails, Responses, And Other Communications Between The SSA And Senior Advisors Or SSO Members Related To The SSA's Evaluation Of SpaceX's Proposal**

In the second category of documents it seeks, Blue Origin speculates that "a few, but not all, communications between the SSA and senior advisors related to her SpaceX evaluation have been included in the Administrative Record."  Pl. Mot. at 24.  Blue Origin misunderstands the contents of the administrative record.  Moreover, Blue Origin's speculation is incorrect, and at any rate would not be sufficient to meet its heavy burden to demonstrate that the administrative record is incomplete.

As Blue Origin notes, the administrative record contains several documents listing the members of NASA's HLS Source Selection Organization (SSO).  *See, e.g.*, AR Tab 35e at 62019, Tab 52c at 62551.  As Blue Origin also notes, Ralph Roe is not listed.  *See id.*, Pl. Mot. at 25.  Mr. Roe is NASA's Chief Engineer.  AR Tab 108b62 at 104880.  In this role, Mr. Roe has "an independent, influential role in providing alternate perspectives during [NASA's] decision-making process."  *Id*.  Mr. Roe has been involved with the HLS program since its inception, and served as a senior advisor to the SSA for the Option A procurement.  *Id*. at 104880-81.  In that capacity, Mr. Roe, or one his delegates, attended the SEP briefings to the SSA and participated in discussions, fully voicing his opinions as NASA Chief Engineer to the SSA, as appropriate and necessary, regarding each offeror's approach.  *Id*. at 104881.  Mr. Roe's April 6, 2021 email at AR Tab 67 follows in the vein described, communicating his opinions to the SSA.

███████████████████████████

It is precisely because Mr. Roe's roles was as an external advisor to the SSA that we included his email to the SSA in the administrative record.  AR Tab 67.  This Court has concluded that "when the analyses or opinions of officials outside an evaluation team are considered by that team in reaching its conclusions, even if a consensus approach is followed by the team, those analyses or opinions should be included as part of an administrative record." *Tauri*, 99 Fed. Cl. at 481.  Because Mr. Roe was offering an outside perspective, his email to the SSA was appropriately included in the administrative record.

The inclusion of Mr. Roe's email, however, does not in any way suggest that predecisional, deliberative communications *internal* to the SSO need to also be included in the administrative record.  As we have explained at length above, those materials are not properly part of an administrative record, as they are immaterial as a matter of law, and superseded and/or incorporated by the final determinations included in the administrative record.

Blue Origin speculates that, because Mr. Roe's email was included in the record, there must be other, similar emails, responses to such emails, or internal discussions of such emails that were not included in the administrative record but should have been.  Pl. Mot. at 25.  This speculation cannot meet Blue Origin's heavy burden to rebut the strong presumption that the administrative record has been properly designated.  *Sara Lee*, 252 F.R.D. at 34.  The administrative record is complete with regard to communications of this nature.[4]  Any discussion

---

[4]  In a footnote, Blue Origin speculates, based on the email contained in the administrative record at AR Tab 55, that other documents are missing from the administrative record.  Pl. Mot. at 25 n.2.  Blue Origin is incorrect.  The administrative record does contain the document related to the meeting referenced in AR Tab 55.  AR Tab 56 is the final version of that document, and incorporates the comments reflected at AR Tab 55 for discussion at that meeting.  AR Tab 56 at 62613.  Blue Origin's speculative allegation that "there must be communications between the [contracting officer] and MEP on this and other evaluation issues" does not meet its heavy

████████████████████████████

of such communications internal to the SSO, to the extent that it exists and is reflected in writing, is not properly part of an administrative record, as it is immaterial as a matter of law, and superseded and/or incorporated by the final determinations included in the administrative record.

Finally, we must briefly address Blue Origin's repeated mischaracterization of a scheduling order issued following the initial status conference in a different bid protest regarding a different procurement and a different administrative record. *See* Pl. Mot. at 3, 16-17, 24, 26. In that order, the Court correctly stated that the "administrative record *must* include all materials developed and considered by the government in making its award decision." *Amazon Web Services, Inc. v. United States*, No. 19-1796, ECF No. 15 (Fed. Cl. Nov. 26, 2019) (emphasis added). The Court then noted that, in "addition to the core documents identified in Appendix C, the record *should* include any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." *Id*. (emphasis added). As we explained in subsequent briefing in that same case, we understood the Court to be recognizing that "informal documents reflecting factors considered in the agency's decision-making process" must be included in the administrative record in appropriate circumstances, *i.e.*, when they were considered in making the award decision at issue in that case, or otherwise qualified for inclusion in the administrative record. *See Amazon Web Services*, No. 19-1796, ECF No. 163 at 13-14. As we explained, we

---

burden to demonstrate that there are any documents meeting this description that are properly part of the administrative record but were not included. Moreover, as discussed extensively throughout this response, internal, predecisional, deliberative communications that are later memorialized in final documents included in the record are not properly part of the administrative record. Accordingly, the record is complete with regard to such documents.

did not understand the Court to have instead, in a short, nonprecedential scheduling order issued without any briefing, argument, or even a motion on the subject, rejected decades of case law explaining that informal, deliberative documents are not typically a part of the administrative record. *Id*.[5]  Even more so than in that case, the order on which Blue Origin relies provides no support for its broad invitation for this Court to discard the same legal guidance and mandate that the administrative record include deliberative material that is immaterial as a matter of law and beyond the scope of APA review.

### C. The Administrative Record Is Complete With Regard To Individual Evaluator Documents And Other Materials Relating To The Individual Proposal Evaluations

In the third category of documents, Blue Origin seeks "TEP or MEP worksheets or other supporting documents generated during the individual proposal evaluations," which Blue Origin incorrectly characterizes as constituting concrete evaluation steps.  Pl. Mot. at 26.  For many of the same reasons we have discussed earlier in this response, no such materials not already included in the administrative record meet the standard for inclusion in the record.  Blue Origin's attempts to equate boxes on a graphic with concrete steps in the evaluation process, Pl. Mot. at 27, is not in accordance with the law, even that cited in Blue Origin's motion.  Accordingly, Blue

---

[5]  We understood the reference to Slack channels and e-mails to pertain, at least in part, to the fact that the administrative record from an earlier protest of the same procurement contained a number of e-mails and Slack messages, because those materials were: (1) included in the GAO agency report, and, thus, were required to be included in the administrative record by statute, *see* 31 U.S.C. § 3556; or (2) were considered in a discrete determination by the contracting officer regarding a conflict of interest issue.  *See id*.  There, as here, that circumstance in no way requires including similar materials in this entirely different administrative record.

███████████████████████████████

Origin cannot meet its burden to rebut the strong presumption that the administrative record is complete with regard to such documents.

As we explain above, the predecisional, deliberative documentation created by individual evaluators operating as part of a larger evaluation team is not properly part of the administrative record unless that documentation constitutes a concrete step in the evaluation process. *Tech Sys.*, 98 Fed. Cl. at 246 ("[W]hether the papers of individual evaluators should even be part of the administrative record will depend on whether the evaluation process included the concrete step of individual evaluations, the records of which must be maintained, . . . or instead used evaluation ratings which from the start were the products of conference and consensus—in which case any individual's notes are more akin to drafts that may be excluded.") (citations omitted); *Lyon Shipyard*, 113 Fed. Cl. at 353 n.4; *Tauri*, 99 Fed. Cl. at 481.

As we explained above in the context of Blue Origin's first category regarding documentation related to the solicitation's FRR requirement, individual evaluators in this procurement did not complete any concrete steps for material not already included in the administrative record.  Individual evaluators did not complete any worksheets that were provided to the SSA, but were part of a larger team approach.  AR Tab 35 at 61921-24.  Documentation created by individual evaluators was internal, predecisional, deliberative material, akin to drafts of the final SEP Report, which is included in the administrative record.  AR Tab 77.

Additionally, contrary to Blue Origin's allegation, Pl. Mot. at 27, the SSA made her decision independently, based on her own "independent analysis and judgment." AR Tab 77 at 63038.  This analysis was based not only on the SEP reports, which she "thoroughly reviewed"

████████████████████████████████

and "fully concurred with," but also on her "consideration of each proposal on its own

independent merits."  *Id*. at 63043.

Moreover, as Blue Origin notes, NASA's evaluation plan expressly discussed the records

that constitute concrete steps in the evaluation process and become part of the "written record of

NASA's final, consensus agency assessment which reasonably explains the basis for the

Agency's judgments and fully supports the selection determination: a SEP Report and/or a SEP

presentation to the SSA; and the SSA Selection Statement."  AR Tab 35 at 61914.  The

evaluation plan further provides that "[i]ndividual evaluator and/or SEP, Technical Evaluation

Subpanel (TEP), Management Evaluation Subpanel (MEP), or Price Evaluation Subpanel (PEP)

draft or preliminary findings, observations, worksheets, notes, reports, briefs, electronic records,

emails, etc. are considered preliminary and pre-decisional, and are therefore not a part of the

written record."  *Id*.   In the cases in which this Court has examined whether material of this

nature constituted a concrete step in the evaluation process and needs to be included in the

administrative record, the Court has consistently examined the terms of the agency's evaluation

plan in making that determination.  *See Tech Sys.*, 98 Fed. Cl. at 245-46; *Tauri*, 99 Fed. Cl. at

481.  Although these passages from the evaluation plan are perhaps not legally dispositive on

their own, the evaluation plan in this procurement could hardly be clearer as to the documents

that constituted concrete steps in NASA's evaluation process, and those that did not.

Blue Origin further alleges that it is entitled to these materials, despite their deliberative

nature, because the deliberative process privilege is a qualified one, and the Government has not

satisfied the procedural and substantive requirements to formally claim the privilege.  Blue

Origin misunderstands – we are not asserting the deliberative process privilege with regard to

these materials at this time.  Rather, as discussed above, we are asserting that these deliberative

documents are not properly part of the administrative record, and, thus, there is no need for us

presently to assert the deliberative process privilege.  *See, e.g.*, *Tafas*, 530 F. Supp. 2d at 801 ("it

would be 'unfair to criticize [the agency] for not claiming a privilege and filing a privilege log as

to documents that it claims should not be in the administrative record in the first place.'")

(quoting *Blue Ocean Inst.*, 503 F. Supp. 2d at 372 n.4).

Moreover, even if we were asserting the privilege, Blue Origin has not nearly satisfied its

burden to demonstrate need for these documents, nor could it, as these documents are immaterial

as a matter of law under APA review, which focuses on the final, stated reasons for an agency's

action, not the draft, predecisional deliberations of members of an evaluation team that were

never even directly reviewed by the decisionmaker and which are reflected in final form in the

documents included in the administrative record.  *Oceana,* 920 F.3d at 865 ("[A]bsent a showing

of bad faith or improper behavior, '[a]gency deliberations not part of the record are deemed

immaterial.'") (citation omitted); *Tafas*, 530 F. Supp. 2d at 796-97 (same).

Blue Origin relies on this Court's decision in *USfalcon, Inc. v. United States*, 92 Fed. Cl.

436 (2010), but it is not to the contrary.  In that case, the Court stated that, in determining

whether an agency's decision is reasonable, it must confirm that it does not run counter to the

evidence before the agency, which "involves verifying that objective elements contained in the

agency's analysis, such as the description of the offeror's narrative, correspond to the evidence in

the record," as well as "checking to see if subjective judgments are reached elsewhere in the

analysis that contradict the evaluators' conclusions." *Id*. at 462 (citations omitted).  In

determining whether an agency's determinations run counter to the evidence before it, a court

needs to examine the factual evidence before the agency and the agency's *final* determination, not every deliberative thought the agency has on its way to making a final determination. Deliberative drafts can shed no light on the question of whether the agency's final decision is supported by the record evidence.

### D. The Administrative Record Is Complete With Regard To Read-Ahead Materials

In the fourth and final category of documents it seeks, Blue Origin alleges that "[t]he Administrative Record does not include the 'Read-ahead' materials that were provided before the SEP's briefing of the SSA." Pl. Mot. at 29. Blue Origin is incorrect – all of the materials provided to the SSA in conjunction with the brief to the SSA described in the evaluation plan are contained in the administrative record. No draft of the final SEP report was provided to the SSA in advance of the selection meeting on April 1, 2021. *See* AR Tab 35 at 61935 ("The SEP Chairperson shall send the SEP Report to the SSA sufficiently in advance of the SSA making any source selection decisions, but need not send the Report prior to making a presentation to the SSA of the SEP's work."). Instead, the PowerPoint presentation contained in the record at AR Tab 61 served as the focus for discussion occurring on that date. The final SEP report, of course, is contained in the record at AR Tab 59. Accordingly, the administrative record is complete with regard to these materials.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Blue Origin's motion to complete the administrative record.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

s/ Patricia M. McCarthy for
Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

ALLISON M. GENCO                    s/ Anthony F. Schiavetti
BRIAN M. STANFORD                   ANTHONY F. SCHIAVETTI
Senior Attorney Advisors            Senior Trial Counsel
NASA Office of the General Counsel  U.S. Department of Justice
                                    Civil Division
                                    Commercial Litigation Branch
                                    PO Box 480, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel: (202) 305-7572
                                    Fax: (202) 305-1571
                                    anthony.f.schiavetti@usdoj.gov

September 16, 2021                   Attorneys for Defendant