# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| BLUE ORIGIN FEDERATION, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>SPACE EXPLORATION )<br>TECHNOLOGIES CORP., )<br><br>Defendant-Intervenor. ) | REDACTED VERSION<br><br><br>Case No. 1:21-cv-01695-RAH<br>Judge Richard A. Hertling |

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORD

*Of Counsel:*

Mark D. Colley
Nathaniel E. Castellano
Thomas A. Pettit
Aime JH Joo
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Kara L. Daniels
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone: (202) 942-5768
Fax: (202) 942-5999

*Attorney of Record for Space Exploration Technologies Corp.*

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    QUESTIONS PRESENTED ........................................................................... 6

III.   STATEMENT OF THE LIMITED FACTS FOR PURPOSES OF THIS RESPONSE .... 6

   A.   The Human Landing System Acquisition ........................................................ 6

      1.   The HLS Option A BAA Source Selection Process And Documentation ..................... 7

      2.   The Solicitation's Milestone FRR Instructions. ............................................ 9

      3.   NASA Contemporaneously Assigned SpaceX A Weakness for Its FRR Milestone Payment Approach ........................................................................ 11

      4.   Initial Selection, Post-Selection Negotiations, and Final Selection ............................ 13

IV.   Legal Standard ................................................................................. 16

V.     THE COURT SHOULD DENY BLUE ORIGIN'S MOTION TO COMPLETE ........... 20

   A.   The Option A BAA Terms Speaks For Themselves; There Is No Need For Discovery Of Internal NASA Communications Regarding The Solicitation's Plain Meaning ...................... 20

   B.   Internal Emails And Communications Between The SSA And Advisors Are Neither Properly Included In A Complete Record Nor Relevant To This Court's Review Of Blue Origin's Claims. ........................................................................................ 25

   C.   Individual Evaluator Worksheets And Other Materials Are Not Relevant To This Court's Review Of Blue Origin's Narrow Claims. ........................................................ 27

   D.   "Read Ahead" Materials Are Not Needed To Complete The Record ........................... 29

VI.   CONCLUSION ................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Acetris Health, LLC v. United States,*
  949 F.3d 719 (Fed. Cir. 2020)..........................................................................24, 25

*AgustaWestland N. Am., Inc. v. United States,*
  880 F.3d 1326 (Fed. Cir. 2018)................................................................................5, 16

*ARKRAY USA Inc. v. United States,*
  2014 WL 2905127 (Apr. 28, 2014) ..........................................................................24, 25

*Banknote Corp. of Am. v. United States,*
  365 F.3d 1345 (Fed. Cir. 2004)........................................................................1, 24, 25

*Bar MK Ranches v. Yuetter,*
  994 F.2d 735 (10th Cir. 1993) ......................................................................................17

*BHB Ltd. P'ship v. United States,*
  No. 19-1610C, 2020 WL 1240916 (Fed. Cl. Mar. 16, 2020) .......................................... *passim*

*Blue Ocean Inst. v. Gutierrez,*
  503 F. Supp. 2d 366 (D.D.C. 2007) .......................................................................... *passim*

*Gulf Group Inc. v. United States,*
  61 Fed. Cl. 338 (2004) .........................................................................................28, 29

*Naval Sys., Inc. v. United States,*
  153 Fed. Cl. 166 (2021) ...............................................................................................4

*Oceana, Inc. v. Pritzker,*
  217 F. Supp. 3d 310 (D.D.C. 2016) ............................................................................4, 18

*Oceana, Inc. v. Ross,*
  920 F.3d 855 (D.C. Cir. 2019) ................................................................................ *passim*

*Oracle Am., Inc. v. United States,*
  146 Fed. Cl. 606 (2019) .......................................................................................17, 28, 29

*Oracle Am., Inc. v. United States,*
  No. 18-1880, 2019 WL 354705 (Fed. Cl. Jan. 23, 2019) ..........................................................19

*Tauri, Group, LLC v. United States,*
  99 Fed. Cl. 475 (2011) ......................................................................................19, 28

**Statutes**

5 U.S.C. § 706 ................................................................................................................16

31 U.S.C. § 3556 ............................................................................................................12

Defendant-Intervenor Space Exploration Technologies Corp. ("SpaceX") hereby responds in opposition to the Blue Origin Federation, LLC ("Blue Origin") motion to complete the Administrative Record. (ECF 37.) Blue Origin seeks four categories of documents that are not typically part of an Administrative Record nor necessary for meaningful and effective judicial review of Blue Origin's claims.

## I.    INTRODUCTION

SpaceX offered what the National Aeronautics and Space Administration ("NASA" or "Agency") considered the best solution for returning astronauts to the Moon—its Human Landing System—at the lowest cost. (AR Tab 77, Source Selection Statement at 63044-49.) Blue Origin's efforts to delay performance of this important NASA mission, while it lobbies Congress for more program funding, resurrect and expand upon the unfairness narrative it contrived in a prior, unsuccessful protest of the same award at the Government Accountability Office ("GAO"). Because the solicitation documents, the proposal submissions, and the considered judgments of the NASA expert evaluators and the Source Selection Authority ("SSA"), as fully documented in the source selection record, do not support its narrative, Blue Origin asks this Court to order excessive additional discovery into NASA's internal communications and emails, meeting minutes, notes and drafts. The Court should decline the request for three principal reasons.

First, because the purpose of a "complete record" is to enable judicial review of the plaintiff's actual claims, whether any "completion" is needed must be reviewed in light of the actual claims in Blue Origin's Complaint. Each procurement error that Blue Origin alleges involves solicitation interpretation, a question of law that the Court will review based on "the plain language of the document":

> Interpretation of the solicitation is a question of law over which we exercise independent review. We begin with the plain language of the document. The solicitation is ambiguous only if its language is susceptible to more than one reasonable interpretation. If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning; we may not resort to extrinsic evidence to interpret them. Finally, we must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions.

*Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004) (internal quotations and citations omitted).

The crux of Blue Origin's complaint (in Counts 1, 3-5) is that the Option A solicitation required SpaceX to propose a Flight Readiness Review ("FRR") payment milestone two weeks prior to each launch contemplated by SpaceX's Concept of Operations (16 launches), and that NASA waived this purported requirement for SpaceX. (ECF 1 at 45-50, 53-59.)  Blue Origin rests these allegations on the flawed premise that the solicitation Statement of Work ("SOW") instruction for an FRR prior to the launch of an "HLS element" encompasses every proposed launch, including launches of "Supporting Spacecraft."  Hence, although SpaceX proposed an FRR prior to the launch of its single-element HLS integrated lander, Blue Origin declares SpaceX deficient, claiming that the solicitation required additional FRRs for other spacecraft launches.   Blue Origin's argument, however, fundamentally misreads the solicitation. Compounding the problem, Blue Origin also applies this same misinterpretation to other milestone review instructions in the solicitation. (ECF 1 ¶¶ 2, 7-8, 88, 95-97, 126-132.)   Blue Origin's motion asks that NASA be directed to collect and produce internal communications and notes regarding officials' understandings of the milestones, but any such extrinsic evidence is immaterial.  The truly voluminous record already produced is more than sufficient for the Court

to interpret the solicitation fully and effectively, and to determine whether it supports Blue Origin's contentions.[1]

Second, although styled as a motion to "complete" the record, Blue Origin offers nothing but speculation to counter the presumption that the United States has, as certified by the NASA Contracting Officer, provided this Court with a complete Administrative Record. As Judge Campbell-Smith recently explained:

> The court presumes that the record is complete unless plaintiffs provide clear evidence that it is not. Plaintiffs' bare assertions that there must be other communications … do not constitute clear evidence that there are items missing from the AR. Without more, a reference in a single letter or email is insufficient to rebut the presumption of completeness.

*BHB Ltd. P'ship v. United States*, No. 19-1610C, 2020 WL 1240916 at *4 (Fed. Cl. Mar. 16, 2020); *see also Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369-71 (D.D.C. 2007) ("the primary question presented is whether Blue Ocean has defeated the presumption that the administrative record is complete by showing a theoretical possibility that other documents not in the record exist…. Under the most traditional understanding of how a party meets its burden of proof, Blue Ocean is reduced to theorizing that the documents may exist, which fails to overcome the presumption that the record is complete."). Blue Origin has not met its burden here. Blue Origin presupposes some change or disagreement among NASA officials about the requirements or the solicitation which the actual record does not suggest. (*See e.g.*, ECF 37 at 2-3.) Blue Origin also speculates without evidence that any communications the United States has produced are incomplete. (*Id.* at 3.)

---

[1] Blue Origin's other contentions that NASA engaged in improper discussions with SpaceX (Count 2) and that NASA had to amend the solicitation based on funding limitations (Count 3) also each turn on the Option A ground rules and the law, not internal communications at NASA. (ECF 1 at 50-55.)

Finally, Blue Origin seeks predecisional and deliberative materials that, even if they do exist, fall outside the scope of the Administrative Record in this protest involving the arbitrary and capricious standard of review:

> The law is clear: predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.
>
> Deliberative documents are excluded from the record because, when a party challenges agency action as arbitrary and capricious, the reasonableness of the agency's action is judged in accordance with its stated reasons. The actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.
>
> As immaterial to the court's decision, predecisional and deliberative documents are not designated part of the administrative record that forms the basis of the court's decision.

*Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 318 (D.D.C. 2016) (internal citations, quotations, and alterations omitted), *aff'd sub nom. Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("The District Court correctly observed that predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.") (internal quotation omitted).[2]

The reason for this rule is readily apparent, as it would create an outsized governmental burden greatly at odds with the much narrower materials relevant for review:

> [P]roduction of the materials Blue Ocean seeks would transform the process of judicial review of administrative decisions greatly even if limited to specific instances of claimed deficiencies in the administrative record. The agency would have to collect all internal communications among agency officials pertaining to the claimed deficiency, catalogue them, and claim the deliberative process

---

[2] As Judge Solomson recently observed, it is helpful to look to decisions from the D.C. Circuit when considering the proper scope of the administrative record. *Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166, 179–80 (2021) (internal citation and quotation omitted) ("the Court finds the D.C. Circuit precedent instructive and persuasive insofar as the two primary Federal Circuit decisions on point are broadly consistent with the approach of other circuits, including the D.C. Circuit – all of which are animated by the same concern: to guard against courts using new evidence to convert the arbitrary and capricious standard into effectively de novo review.")

privilege where appropriate, which may be as to all of them. The privilege question would have to be resolved before judicial review of the administrative decision could even begin. Creating such a new burden on the agency, the parties and the court by forcing production of even a limited number of interagency deliberative documents requires a clear command from the court of appeals, particularly in light of the unequivocal statement by that court that such materials are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious.

*Blue Ocean*, 503 F. Supp. 2d at 372; *see also Oceana*, 920 F.3d at 865 ("The federal rules do not require parties to provide logs of all documents that were not produced because they were deemed immaterial or irrelevant. It would be quite odd to require a different procedure in agency review cases, particularly since 'the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.'")

Finally, Blue Origin's continued efforts to cherry pick arguments and rulings from the Amazon Web Services, Inc. ("AWS") protest challenging a cloud contract award by another agency are unavailing. To be sure, the plaintiff in that case, like the plaintiff here, are owned by the same individual, and the same Department of Justice counsel is representing the United States in this matter, but that is where the similarities end. The issues presented to Judge Campbell Smith and the procedural grounds on which those issues were brought are inapposite to the Blue Origin's claims. This is evident from the order Blue Origin's motion relies on, which responded to AWS's early motion to *supplement* the record. (ECF 37 at 3 (citing Case No. 19-1796-PEC, Dkt. No. 15 at 2 (Order); *but see id.,* Dkt. Nos. 146-149 (redacted AWS Complaint, Motion to Supplement).) Blue Origin cannot and has not even attempted to meet the high burden for supplementing the record. *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331-23 (Fed. Cir. 2018) (reiterating that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review" and finding that the trial court abused its discretion by supplementing the record, and relying on

supplemental evidence to reach its decision.")  Blue Origin's motion to complete the record

cannot be used as a mechanism to obtain predecisional and draft materials that "are not part of

the administrative record to begin with."  *Oceana*, 920 F.3d 855.

## II.    QUESTIONS PRESENTED

1.    Whether the materials that Blue Origin seeks are relevant to this Court's review of

the Blue Origin's allegations.

2.    Whether Blue Origin has rebutted the presumption that the United States has

already provided a complete record.

2.    Whether any of the pre-decisional correspondence and draft materials that Blue

Origin seeks are necessary to constitute a "complete" Administrative Record.

## III.    STATEMENT OF THE LIMITED FACTS FOR PURPOSES OF THIS RESPONSE

### A.    The Human Landing System Acquisition

The HLS acquisition is a critical and early component to NASA's *Artemis* program, and a

public private partnership to develop a landing capability to be demonstrated in the first lunar

mission and evolving to enable human exploration to Mars and beyond:

> America has entered a new era of exploration.  NASA's *Artemis* program will lead
> humanity forward to the Moon and prepare us for the next giant leap, the
> exploration to Mars.
>
> ….
>
> The Moon plan is twofold: it's focused on achieving the goal of an initial human
> landing by 2024 with acceptable technical risks, while simultaneously working
> toward sustainable lunar exploration in the mid- to late 2020s.
>
> 2024 is not an arbitrary date.  It is the most ambitious date possible, and our
> success at the moon, and later, Mars, will be grounded in our national goals and
> robust capabilities.  The United States leads in space exploration now; however,
> as more countries and companies take aim at the Moon, America needs the
> earliest possible landing to maintain and build on that leadership, as well as to
> prepare for a historic first mission to Mars.

6

….

We need several years in orbit and on the surface of the Moon to build operational confidence for conducting long-term work and supporting life away from Earth before we can embark on the first multi-year mission to Mars.  The sooner we get to the Moon, the sooner we get American astronauts to Mars.[3]

The HLS Option A contract serves to "further facilitate the rapid development and demonstration" of a landing system to "deliver the first woman and person of color to the moon." (AR Tab 77, Source Selection Statement at 63038.)  NASA initially awarded "base period" contracts to SpaceX, Blue Origin, and a third contractor (Dynetics) permitting each to begin preliminary design of its unique landing system.  (*Id.*)  The base period performance enabled NASA and the HLS contractors to advance and test their technologies intended for continued development through a demonstration landing under the Option A contract.  (AR Tab 43, HLS Briefing Feb. 2021 at 2247 ("Instead of requiring adherence to NASA technical standards, NASA successfully adjudicated hundreds of contractor-specific technical standards during the first three months of the base period for use during the second phase of HLS—Option A—saving time in the outyears when needing to focus on hardware."); AR Tab 77, Source Selection Statement at 63038.)

## 1. The HLS Option A BAA Source Selection Process And Documentation.

To further enable each contractor to propose its most innovative lander solution, NASA broke from the familiar strictures of FAR Part 15 and solicited the base period and Option A awards, respectively, using the Broad Agency Announcement ("BAA") "other competitive procedure" in FAR 6.102(d)(2) and FAR 35.016.  (AR Tab 27, Option A BAA at 24473.)[4]  In

---

[3] ARTEMIS PLAN: NASA'S LUNAR EXPLORATION PROGRAM OVERVIEW 9 (Sept. 2020), at https://www.nasa.gov/sites/default/files/atoms/files/artemis_plan-20200921.pdf

[4] Unless otherwise noted, all citations to the Option A BAA are to Amendment 1.

accordance with those FAR provisions, the Option A BAA advises that "NASA would not conduct a comparative assessment and trade-off amongst proposals. Rather, each proposal [would] be evaluated on its own individual merits." (*Id.*) The ground rules state: "[T]he primary basis for selecting one or more proposals for award shall be technical, importance to the Agency's programs, and funds availability," as delineated through the evaluation factors. (*Id.* at 24475.)

The three evaluation factors are: 1) Technical Approach, 2) Total Evaluated Price, and 3) Management Approach (including base period performance). (*Id.*) For each of these factors, the Option A BAA tasks the Source Evaluation Panel ("SEP") to evaluate proposals and present its results to the SSA in the form of a Final Report. (*Id.* at 24480.) In the selection decision, the SSA explains that the Option A SEP, was comprised of three sub-panels, one for each factor. (AR Tab 77, Source Selection Statement at 63039.) The SSA described the evaluation process in the Source Selection Statement:

> The SEP evaluated proposals in accordance with the evaluation procedures established in the HLS Option A solicitation. ***To fully document its work, the SEP produced a report for each offeror containing all of the SEP's findings, ratings, and other evaluative content.*** The SEP has provided these reports to me, along with a comprehensive briefing summarizing its evaluation work and conclusions.

(*Id.*)[5] The SSA's explanation aligns with NASA's Option A Evaluation Plan, which makes clear that "the written record of NASA's final consensus agency assessment" is the "SEP Report and/or SEP presentation to the SSA; and the SSA Selection Statement." (AR Tab 35, Evaluation Plan at 61914.) NASA's evaluation plan keeps "preliminary and pre-decisional" any individual evaluator or panel draft or preliminary findings, observations, worksheets, notes or electronic

---

[5] All emphasis of quoted material in this submission is added unless otherwise expressly noted.

emails. (*Id*.) The Administrative Record contains the SEP Report for each offeror at Tabs 59a through 59c and the briefings at Tabs 48, 52a-52c, and 61.

The Option A BAA authorizes the SSA to "make initial, non-binding selections of an Offeror or Offerors for the purpose of having the Contracting Officer engage in post-selection negotiations." (AR Tab 27, Option A BAA at 24480.) The Option A BAA defines post-selection negotiations as "exchanges with Offerors who have been selected for potential contract award that result in the Contracting Officer inviting the Offeror to revise only those specific portions of its proposal that have been identified by the Contracting Officer as open to revision." (*Id*. at 24434.) The ground rules also authorize the Contracting Officer to "negotiate any aspect of an Offeror's milestone payment amounts, schedule, and/or acceptance criteria prior to award of Option A." (*Id*. at 24467; AR Tab 108b55-102a, Supp. COSF at 104673-75 (Contracting Officer describing purpose of post-selection negotiations).)

## 2. The Solicitation's Milestone FRR Instructions.

The Option A BAA SOW describes various "Milestone Reviews" – some identified by the contractor and others identified by NASA – with specified criteria for acceptance and contract payments tied to achieving each milestone. (AR Tab 27e, Att. G SOW at 32964-66.) One of the NASA-specified Milestone Reviews is the FRR, which the SOW instructs "*should* be completed by two (2) weeks before launch of *each HLS element*." (*Id*. at 32972.) Per the SOW, "[s]hould denotes a statement of best practice or intent" or "expectation," which NASA contrasts with "shall," which denotes a "requirement." (*Id*. at 32949.) Following the FRR "Objective" statement is a Table of Acceptance Criteria to complete the FRR, which provides in relevant part: "The flight vehicle, launch vehicle, and support spacecraft (such as propellant storage, propellant transfer, and/or upper stage vehicles that provide transportation capabilities beyond

the standard for orbit insertion) are ready for flight." (*Id.* at 32972.)  In other words, assessing the readiness of associated vehicles and support spacecraft is part of an FRR for the "HLS element."

The SOW does not define "HLS element" expressly.  Other SOW definitions make clear, however, that (i) "elements" are part of the HLS Integrated Lander, (ii) the Integrated Lander may be a "single element", and (iii) "Supporting Spacecraft" are mutually exclusive with any part of the Integrated Lander (or any elements thereof)":

> **Integrated Lander**: Any and all combinations of **contractor elements** (e.g. Ascent Element), **including potentially a single element**, which is integrated at any time crew are onboard.

> **Supporting Spacecraft**: Any contractor spacecraft **that is not otherwise the Contractor's HLS Integrated Lander**, Launch Vehicle, or AADA, but that is otherwise required for the Contractor to execute its demonstration mission or any portion thereof in performance of this contract, including, but not limited to, rendezvous, proximity operations, docking and undocking (RPODU), propellant transfer, and orbital maneuvering and transfer.

> **HLS**: All objects, vehicles, elements, integrated systems, systems, subsystems, or components thereof that are designed, developed, and utilized by the contractor, its teammates, subcontractors, and suppliers in performance of this contract, and which collectively **comprise the contractor's Integrated Lander (or elements thereof), all Supporting Spacecraft, all launch vehicles necessary for launch and delivery of the contractor's Integrated Lander (or elements thereof) and its Supporting Spacecraft,** and the contractor's Active-Active docking adapter (AADA) (if required for performance of the contractor's crewed demonstration mission).

(*Id.* at 32948.)  The Option A BAA language tying the NASA FRR milestone review to the HLS Integrated Lander elements and not to the Supporting Spacecraft makes sense because the Lander elements are the vehicles that will be transporting NASA astronauts (i.e., "integrated at any time crew are on board"):

> NASA tied the FRR milestones to **elements** specifically for a very good reason: **NASA's astronauts will, at some point during each offeror's mission, either be traveling inside of an HLS element, or traveling within an integrated spacecraft**

> ***that is connected to or comprised of one or more HLS elements. The same cannot be said for Supporting Spacecraft,*** which never transport astronauts and are never connected to one or more HLS elements while the elements (individually or as part of an Integrated Lander) are transporting astronauts. As such, this heightens the importance that NASA be sufficiently involved with, and approve of, all FRRs for HLS elements.

(AR Tab 108b55-102a, Supp. COSF at 104678.)

### 3. NASA Contemporaneously Assigned SpaceX A Weakness for Its FRR Milestone Payment Approach

NASA gave vendors "the liberty to propose a different architecture" and "let the vendors propose their best solution." (AR Tab 2, May 2019 Minutes at 56.) SpaceX did just that. Rather than proposing a multi-element lander (e.g., ascent element, descent element, transfer element),[6] SpaceX's single-element HLS Starship will travel from Earth to the lunar surface and back. (AR Tab 34d.55, Vol. IV Att. 23a at 56277 (███████████████████████████).) SpaceX also proposed two supporting spacecraft – the ██████ tanker vehicles – which ███████████████████████████████████████ ███████. (*Id.* at 56274; AR Tab 34a, Vol. I at 55037.) SpaceX's initial proposal offered the FRR milestone for its single element Integrated Lander to occur two weeks before launch, with Acceptance Criteria based on the Option A SOW: "████████████████████████████████ █████████████████████████████████████████████████ █████████████████████████████████." (AR Tab 34d.34 – Vol. IV, Att. 14 at 55465; AR Tab 59c, SpaceX SEP Report at 62813.)

---

[6] The HLS is responsible for, among other things, "descent to the lunar surface" and "ascent from the lunar surface and safe return of the crew...." (AR Tab 27e, Att. G - SOW at 32986.) While SpaceX proposed a single element design, Blue Origin's approach ███ ██████████████████████████████████████████

11

████████████████████████████████████████
██████████████████████████████████

The SEP recognized that, because SpaceX's FRR █████████████████████████
████████████████████████████, SpaceX's unique single element Integrated Lander
approach had the ███████████████████████████████████████████████████████
██████████████████████████ ██████████████████████████████ (AR Tab
59c, SpaceX SEP Report at 62806, 62812-14.)  The SEP determine that this situation presented
some added risk, and so assigned SpaceX's proposal a single weakness under Management
Approach.  (*Id.*)

Notwithstanding this single weakness, the SEP rated SpaceX's proposal Outstanding
under that factor, describing SpaceX's proposal as "of exceptional merit" and "fully responsive to
the BAA objectives as set forth under this evaluation factor."  (*Id.* at 62806.)  The SEP found that
"███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████.")  (*Id.*)

The Contracting Officer's Supplemental Statement to GAO—included in the
Administrative Record as a matter of law, 31 U.S.C. § 3556—gives further context for the SEP's
finding and the assigned FRR weakness, particularly that SpaceX proposed ██████████████
████████████████████████████████████, under the approval of the FAA and with
NASA's participation:





(AR Tab 108b55-102a, Supp. COSF at 104678-83 (original emphasis omitted); *see also id*. at 104682 (describing ████ ████████ ████ FRR milestone, and explaining "not only is SpaceX performing a wide breadth of readiness reviews, but its proposal provides ████████ ███████████████████████████████████████████████████████ ████████████ *id*. at 104722 (table mapping SOW FRR milestones to SpaceX proposal).)

### 4. Initial Selection, Post-Selection Negotiations, and Final Selection

The Agency's available funding was insufficient to make an Option A contract award to any of the three base period contractors with the prices and payment schedules they had each

respectively proposed. (AR Tab 64, Conditional Selection at 62893.) Therefore, in accordance

with Option A BAA Section 6.1, the SSA determined that it was in the Agency's best interest to

conditionally select SpaceX's proposal for the purposes of engaging in limited, post-selection

negotiations. (*Id.*)

The Option A BAA Section 6 "Award Information" identifies available funding as a

relevant factor for NASA's ultimate determination to make one, two, or no awards, and advised

that NASA's obligation to make any award was contingent upon the availability of funds:

> NASA reserves the right to select for award multiple, one, or none of the
> proposals received in response to this Appendix. The overall number of awards
> will be dependent on funding availability and evaluation results. NASA may
> evaluate and select for award, based on initial proposals, without discussion or
> negotiations. However, NASA reserves the right to conduct discussions or
> postselection negotiations if deemed in the best interest of the Government.
> Accordingly, each Offeror should submit its initial proposal to the Government
> using the most favorable terms from a price and technical standpoint.
>
> ….
>
> Funds are not currently available for this solicitation, but are expected to become
> available on or before contract award. The Government's obligation to make
> awards is contingent upon the availability of appropriated funds from which
> payments can be made and the receipt of proposals that NASA determines are
> acceptable.

(AR Tab 27, Option A BAA at 24481.)

The SSA made the initial selection of SpaceX for post-selection negotiations and the

Option A contract award based on the entire contemporaneous evaluation, including the

milestone weakness. (AR Tab 64, Conditional Selection at 62893 ("

14

███████████████ ████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████

Despite Blue Origin's repeated assertions that NASA found SpaceX's proposal non-compliant with a material requirement, the SSA's initial selection memo confirms that "[i]t is the conclusion of the SEP and the CO that SpaceX's proposal, ███████████████████████ ████████████████████████████████████████████████████████████ — ██ ████████████████████████████████ (*Id*. at 62892.)

NASA followed the Option A BAA's post-selection negotiation process, and those negotiations with SpaceX did not affect SpaceX's evaluation or increase its price. (*Compare* AR Tab 27, Option A BAA at 24466 ("The Government reserves the right to negotiate any aspect of an Offeror's milestone payment amount, schedule, and/or acceptance criteria prior to award of Option A") with AR Tab 63, Negotiation Letter at 62886 ("the Government is commencing these negotiations to address only your firm's price- and milestone-related issues.").) The SEP and the SSA reasonably evaluated SpaceX's proposal as Acceptable under the Technical Approach factor and Outstanding under the Management Approach Factor prior to the post-selection negotiations, and those evaluation findings and ratings did not change after the post-selection negotiations. (AR Tab 77, Source Selection Statement at 63049 ("In light of my assessment above, *and in consideration of SpaceX's remaining* evaluation *record pertaining to this factor,* I concur with the SEP that SpaceX's management approach is of exceptional merit and fully responsive to the objectives of the solicitation.").)

The Source Selection Statement provides a comprehensive, contemporaneous explanation of the rationale for the SSA's decision to select SpaceX alone for an Option A contract award,

15

consistent with the Option A BAA ground rules. (AR Tab 77, Source Selection Statement.) SpaceX's proposed solution earned higher ratings than Blue Origin and Dynetics, and "SpaceX's Total Evaluated Price of $2,941,394,557 was the lowest among the offerors by a wide margin." (*Id.* at 63044.) Blue Origin proposed a price of nearly $6 billion, while Dynetics proposed a price above $9 billion. (AR Tab 61, SSA Selection Meeting at 62859, 62869.) The SSA concluded that "SpaceX submitted a compliant and timely revised proposal…." (AR Tab 77, Source Selection Statement at 63039.) The SSA provided a detailed assessment of the advantages of SpaceX's approach, concluding that "the SpaceX proposal is meritorious and advantageous to the Agency, and that it aligns with the [Solicitation] objectives," and determined that "SpaceX's acceptable technical approach coupled with its outstanding management approach provide abundant value for NASA at its Total Evaluated Price." (*Id.* at 63049.)

## IV.     Legal Standard

When reviewing a bid protest, this Court applies the "appropriate Administrative Procedure Act  (APA) standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *AgustaWestland N. Am. Inv. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (citation omitted) (holding supplementation of agency record was abuse of discretion). Rule 21 of Appendix C to this Court's rules requires the United States to identify and provide the Administrative Record in a protest case, and Rule 22 includes a non-exhaustive list of "core documents" that qualify for inclusion. RCFC Appx. C ¶¶ 21, 22. The Court presumes that the Government's designation of an Administrative Record is complete "unless plaintiffs provide clear evidence that it is not." *BHB Ltd.*, 2020 WL 1240916 at *4; *Oceana*, 920 F.3d at 865 ("'the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.'"); *Bar MK*

*Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (same). A plaintiff cannot overcome this presumption by simply theorizing that unidentified documents other than those produced must exist. *BHB Ltd.*, 2020 WL 1240916 at *4 ("Plaintiffs' bare assertions that there must be other communications … do not constitute clear evidence that there are items missing from the AR. ") To hold otherwise, would render the presumption empty "because the possibility that internal, deliberative documents exist would occur in every APA case since the employees of agencies must communicate with each other…." *Blue Ocean*, 503 F. Supp. at 369-70.

Because review is limited to the agency's stated reasons for its final decision, this Court has rejected protester attempts, like Blue Origin's here, to claim that draft documents and evaluator notes are necessary for a complete Administrative Record. For example, even in a case involving serious conflict of interest allegations (not present here), Judge Bruggink limited his review to the Contracting Officer's final documented assessment and rejected the protester's motion to obtain earlier drafts and notes underling the contracting officer's investigation and analysis:

> [R]egarding any record of the interviews the contracting officer conducted, the government represents that the contracting officer took notes on her interviews in drafts of her final decision or in informal notes rather than recording or otherwise documenting the interviews. Because the reassessment itself is in the AR, it is unnecessary to include earlier drafts of that document or informal notes. We deny Oracle's motion to include in the AR notes or drafts relating to the contracting officer's Reassessment of Potential Procurement Integrity Act Violation and Impact.

*Oracle Am., Inc. v. United States*, 146 Fed. Cl. 606, 607 (2019).

Attempting to turn the requirement for a "complete" record into something akin to a civil discovery right, Blue Origin mischaracterizes the law to suggest that every single internal email, communication, draft, and worksheet related to the Option A procurement must be included for the record to be "complete," and that in order to withhold any of those documents the United

States must first identify every such draft document and internal exchange, prepare a privilege log, and satisfy the Court that some exception applies that would allow the United States to withhold those documents. That is simply not the case. Draft and other predecisional materials are presumed to be excluded from the Administrative Record in the first place, because where, as here, a protester challenges an agency action under the arbitrary and capricious standard, the agency's actions are judged by its stated reasons:

> The law is clear: predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.
>
> Deliberative documents are excluded from the record because, when a party challenges agency action as arbitrary and capricious, the reasonableness of the agency's action is judged in accordance with its stated reasons. The actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.
>
> As immaterial to the court's decision, predecisional and deliberative documents are not designated part of the administrative record that forms the basis of the court's decision.

*Oceana*, 217 F. Supp. 3d at 318 (internal citations, quotations, and alterations omitted). The

D.C. Circuit affirmed the same:

> We also find that the District Court did not abuse its discretion by declining to require that the Fisheries Service include on a privilege log those documents that the agency excluded from the administrative record because they were deemed predecisional and deliberative. The District Court correctly observed that predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record. As we have held, on arbitrary and capricious review, absent a showing of bad faith or improper behavior, agency deliberations not part of the record are deemed immaterial. Because predecisional documents are immaterial, they are not discoverable. A privilege log is required only when a party withholds information otherwise discoverable by claiming that the information is privileged, and since predecisional documents are irrelevant and therefore not otherwise discoverable, they are not required to be placed on a privilege log.
>
> The fact that the agency could also assert the deliberative process privilege over such predecisional documents does not change the analysis. Rather than

18

submitting a privilege log, on APA review, the agency must submit proper certification that the record is complete, which serves as "formal representation by the agency that it duly evaluated all predecisional documents before excluding them from the record. The federal rules do not require parties to provide logs of all documents that were not produced because they were deemed immaterial or irrelevant. It would be quite odd to require a different procedure in agency review cases, particularly since the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.

*Oceana*, 920 F.3d at 865 (internal citations, quotations, and alterations omitted).

There is good reasons for this rule excluding from the record the types of predecisional and deliberative documents that Blue Origin seeks:

[P]roduction of the materials Blue Ocean seeks would transform the process of judicial review of administrative decisions greatly even if limited to specific instances of claimed deficiencies in the administrative record. The agency would have to collect all internal communications among agency officials pertaining to the claimed deficiency, catalogue them, and claim the deliberative process privilege where appropriate, which may be as to all of them. The privilege question would have to be resolved before judicial review of the administrative decision could even begin. Creating such a new burden on the agency, the parties and the court by forcing production of even a limited number of interagency deliberative documents requires a clear command from the court of appeals, particularly in light of the unequivocal statement by that court that such materials are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious.

*Blue Ocean*, 503 F. Supp. 2d at 372.

Finally, what constitutes a "complete" record in any given case is driven, not only by the nature of APA review, but also by the nature of the plaintiff's claims. There is no cause to direct an agency to cull through its internal records to identify documents and communications unnecessary to review and resolve the protester's claims. *See Oracle Am., Inc. v. United States*, No. 18-1880, 2019 WL 354705, at *4 ("Oracle's protest presents a limited question and the AR is shaped by the confines of Oracle's protest."); *Tauri Group, LLC v. United States*, 99 Fed. Cl. 475, 481 (2011) (emphasis added) ("Of course, in a bid protest, the administrative record need

not consist of every single document related in any way to the procurement in question, ***but may be reasonably limited to materials relevant to the specific decisions being challenged***.").

## V.    THE COURT SHOULD DENY BLUE ORIGIN'S MOTION TO COMPLETE

Blue Origin declares the record incomplete based on the flawed premise that Blue Origin is entitled to each of the following categories of records and that such records are "missing" from the Administrative Record:

- Internal NASA emails and other communications relating to the solicitation FRR and other milestone instructions that Blue Origin contends SpaceX failed to satisfy (including NASA emails about changes in NASA's understanding or interpretation of these milestones or any alleged SpaceX noncompliance) (ECF 37 at 2);

- Internal emails and communication "on other topics with individuals on the Source Selection Organization ("SSO") or other senior advisors outside the SSO who either were consulted or relied upon in the evaluation and award process" (*id.* at 3);

- Evaluator worksheets, notes and drafts  (*id.* at 4); and

- "Read ahead" materials that Blue Origin contends were provided to the SSA prior to the SEP briefing, including any draft SEP reports and summarizes of the offerors' proposals.  (*Id.* at 5).

Neither the law nor the facts support the relief Blue Origin seeks.

### A.    The Option A BAA Terms Speaks For Themselves; There Is No Need For Discovery Of Internal NASA Communications Regarding The Solicitation's Plain Meaning.

Attempting to leverage its false narrative, Blue Origin contends that:

[T]he Administrative record fails to include internal NASA emails or records documenting communications (*e.g.*, internal communication platform records) regarding NASA's understanding, interpretation or application of the Solicitation's FRR requirement and other milestone requirements during the evaluation process or award process, even though NASA determined that SpaceX's proposal was noncompliant with the Solicitation on that issue and then awarded a contract to SpaceX anyway.

(*Id.* at 20-24.) Blue Origin's motion depends on (i) speculation that internal emails and other NASA communications exist about how to interpret the solicitation, (ii) the legally flawed position that such predecisional and draft exchanges are included in a complete record, and (iii) the fiction that such extrinsic evidence, if it exists, is material to the legal issues before this Court – issues involving solicitation interpretation. Blue Origin is wrong on all counts.

First, Blue Origin has not met its burden to overcome the presumption that the record is complete. The Agency Report submitted to GAO and now a part of this Court's record contains multiple declarations from NASA subject matter experts confirming that NASA did not "change its interpretation or understanding" of the milestone requirements as alleged by Blue Origin, nor did NASA find SpaceX deficient – facts confirmed by the contemporaneous evaluation. (*Compare* AR Tabs 108b61-62 *with* AR Tab 59c, SpX SEP Report at 62806, 62812-14.) For example, NASA's Chief Engineer, ███████████, an SSO member and senior advisor to the SSA, confirmed that, "SpaceX's proposal of a single NASA FRR, and the SEP's evaluation of that aspect of SpaceX's proposal, was not even among the topics that spurred discussions or debate during" the SEP's briefings to the SSA, and "we did not feel that SpaceX's proposed single NASA FRR alone posed a technical or safety risk in its proposal." (AR Tab 108b61-112b, Decl. Of ████████ at 104874-75.) ████████ explained that NASA's experts were aligned:



> In a briefing that included all of NASA's Technical Authorities serving as advisors to the SSA, ███████████████████████████████████████, *none of us felt that SpaceX's single NASA FRR constituted a deficiency, nor even a technical shortcoming in any capacity, or that the SEP's evaluation of this aspect of SpaceX's proposal was in error in any capacity*.... ████████████████
> ████████████████████████████████████████████████
> ████████████████████████████████████████████████
> ██████████████████████████████████████ I was otherwise satisfied from an engineering and safety perspective that the proposed SpaceX

█████████ appropriately addressed compliance to NASA standards, including safety standards.

(*Id.* at 104875.)

Further undermining Blue Origin's false narrative that SpaceX's proposed approach created safety issues or that the NASA evaluators had conflicting views about the solicitation milestone requirements, the efficacy of SpaceX's approach, or the SEP's evaluation of that approach as a relatively minor weakness, several other senior NASA officials— █████████

██████████████████████████████████████████████

█████████ —confirmed █████████ representations that SpaceX's FRR approach was not viewed as a safety or technical risk, was not among the topics that spurred debate, and none "felt that SpaceX's single NASA FRR constituted a deficiency, nor even a technical shortcoming in any capability, or that the SEP's evaluation of this aspect of SpaceX's proposal was in error in any capacity." (AR Tabs 108b61a-112a, Decl. of █████████ at 104872; AR Tab 108b61c-112c, Decl. of █████████ at 104879 (these documents are included in the Administrative Record as a matter of law).) Blue Origin's speculation that debate or dissenting views exist is not sufficient to overcome the presumption of record completeness here.

Courts have consistently rejected requests like Blue Origin's that seek broad document production based on mere postulation that additional materials must exist:

> Blue Ocean largely seeks unspecified documents that are likely to exist, it argues, as a result of other documents that are included in the administrative record. However, Blue Ocean's evidence of these additional documents is circumstantial in the truest sense of the word, i.e. "[e]vidence of some collateral fact, from which the existence or non-existence of some fact in question may be inferred as a probable consequence." William P. Richardson, The Law of Evidence § 111 at 68 (3d ed.1928), quoted in Black's Law Dictionary (8th ed.2004). Blue Ocean is not indicating specific, known additional documents that it insists should be included in the administrative record. Instead, it reasons that because there are certain documents in the administrative record, it follows that there must have been discussions and analyses of the issues raised by those documents. Those analyses

███████████████████████████████

███████████████████████████

and the notes of those discussions, whether occurring in person or through email or by phone, must also exist and be placed in the administrative record to make the record "whole" as the APA requires. *See* Pls. Mem. at 9–10.

....

Thus, the primary question presented is whether Blue Ocean has defeated the presumption that the administrative record is complete by showing a theoretical possibility that other documents not in the record exist. In my view, it has not. At most, it is merely as likely that such documents exist as it is that they do not. Under the most traditional understanding of how a party meets its burden of proof, Blue Ocean is reduced to theorizing that the documents may exist, which fails to overcome the presumption that the record is complete. Indeed, if it did, there would be no presumption of a complete record because the possibility that internal, deliberative documents exist would occur in every APA case since the employees of agencies must communicate with each other in the process of promulgating a final rule.

*Blue Ocean*, 503 F. Supp. 2d at 370-71; *BHB Ltd.*, 2020 WL 1240916 at *4 ("Plaintiffs' bare assertions that there must be other communications … do not constitute clear evidence that there are items missing from the AR.")

Second, Blue Origin seeks predecisional and deliberative communications that are not properly included in the Administrative Record in the first place; this Court's rational basis review must judge the NASA's evaluation and award decision actions based on the reasons that NASA stated in the evaluation record and award decision. *See Oceana*, 920 F.3d at 865 ("The District Court correctly observed that predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.").

Third, even assuming that NASA officials had differing interpretations of the solicitation – something the record does not bear out – such opinions are not material to Blue Origin's claims. Blue Origin contends that the requested internal exchanges relating to NASA's understanding of the FRR milestone are relevant to the Complaint allegations that "SpaceX's

proposal was 'not in accordance with and was inconsistent with any interpretation of the Solicitation's FRR required milestone review activities," and that this purported "failure makes SpaceX's proposal unawardable." (ECF 37 at 20-24.) But that is incorrect as a matter of law. Blue Origin's allegations that SpaceX submitted a deficient proposal and that NASA waived a material solicitation requirement during negotiations all turn on Blue Origin's argument that a separate FRR is required for every Supporting Spacecraft launch. That is a straight-forward question of solicitation interpretation, an issue of law for the Court to decide based on the solicitation documents. *Banknote*, 365 F.3d at 1353.

Blue Origin's reliance on *ARKRAY USA Inc. v. United States*, 2014 WL 2905127 (Apr. 28, 2014), is misplaced. In that case, the protester alleged that the awardee's product was manufactured in China in volitation the Trade Agreements Act ("TAA"). *Id.* at *1. To resolve that question, the Court would necessarily have to delve into whether the agency reasonably understood the nature and origin of the awardee's product, and whether the agency reasonably determined how the TAA applied to the specific procurement at hand. *See Acetris Health, LLC v. United States*, 949 F.3d 719, 730-31 (Fed. Cir. 2020) (explaining that procuring agency is responsible for discretionary determination as to whether a particular product qualifies as TAA compliant). In the context of the claims and issues raised in *ARKRAY*, it made sense for the Court to complete the record with documents showing how the agency viewed the TAA's application to that procurement and "provide factual information related to [the awardee's] compliance with the TAA requirement." *ARKRAY*, 2014 WL 2905127 at *5.

Unlike the TAA, which is a complex set of statutory and regulatory requirements that may be incorporated into, but exist outside of, a solicitation, *Acetris*, 949 F.3d 722-24 (describing legal framework), here the FRR and other milestone reviews exist within the four

corners of the Option A BAA. And, unlike an agency exercising discretion to determine if and how the TAA applies in a procurement, *id.* at 730-31, the Court interprets the solicitation de novo, *Banknote*, 365 F.3d at 1353. Accordingly, *ARKRAY* is inapposite. Blue Origin has not and cannot establish a need for discovery into NASA email and other correspondence regarding the FRR and other milestone reviews spelled out in the solicitation.

> **B.    Internal Emails And Communications Between The SSA And Advisors Are Neither Properly Included In A Complete Record Nor Relevant To This Court's Review Of Blue Origin's Claims.**

Blue Origin next claims that, to be complete, the record must include "emails and other communications, including responses, with members of the SSO and other NASA senior advisors that advised and were consulted during the Solicitation's evaluation and award process." (ECF 37 at 20, 24-26.)  This Blue Origin discovery request fails for similar reasons as its first request.

At the outset, Blue Origin has not provided a sufficient basis to rebut the presumption of completeness.  Blue Origin points to a single email in the record, sent from ▮▮▮▮ to the SSA, and asserts that "because the Administrative Record shows that the SSA solicited opinions and feedback from other senior advisors outside the SSO, the content of ▮▮▮▮ email indicates that there are likely additional communications in response to that email…as well as other similar internal agency communications between and among, the SSO, or other senior advisors relating to the SSA's evaluation of SpaceX's proposal."  (ECF 37 at 25.)  Blue Origin's bare objection is the same form of speculation that Judge Campbell Smith recently rejected in *BHB Ltd.*, 2020 WL 1240916 at *4 ("Without more, a reference in a single letter or email is insufficient to rebut the presumption of completeness.").

In a footnote, Blue Origin cites Agency emails about budgetary considerations as evidence that all sorts of internal agency evaluation emails have been omitted from the record. (ECF 37 at 25 n.2.) Blue Origin's leap offers no basis for the Court to find this record incomplete. The D.C. District Court in *Blue Ocean* soundly rejected similar arguments that, just because some record documents reference a meeting or discussions, the Administration Record must include all such documents. 503 F. Supp. 2d at 370 (plaintiff failed to rebut presumption of a complete record despite arguing that "the administrative record indicated that [agency] staff discuss this question, but that the record contains no materials reflecting the details of that discussion or any related communications, reports, or analyses."). As the district court recognized in *Blue Ocean*, the type of discovery that Blue Origin seeks here would greatly transform the administrative review process. *Id.* at 372.

Second, this second category of documents sought by Blue Origin – like the first – suffers from the fact that predecisional and deliberative communications are not properly included in the Administrative Record in the first place. This Court's rational basis review must judge the NASA's evaluation and award decision actions based on the reasons that NASA stated in the evaluation record and award decision. *See Oceana*, 920 F.3d at 865.

Third, Blue Origin has again failed to explain how this broad category of documents is relevant to the Court's review of the discrete claims set forth in Blue Origin's Complaint. They are not. This Court does not need internal emails between the SSA and her various advisors in order to interpret the plain text of the Option A BAA or milestone reviews, or whether NASA waived or changed requirements during the documented negotiation exchanges. Nor are the internal exchanges relevant to this Court's review of Blue Origin's claims that NASA violated procurement law by conducting negotiations with SpaceX alone or making a single award

without amending the solicitation. To the extent Blue Origin eventually articulates any additional, concrete objections to the SEP Report findings and SSA award decision, the rationality of those decisions can and should be judged based on the reasoning stated in those documents, not in reference to every email the SSA may have exchanged with her advisors during this procurement.

### C. Individual Evaluator Worksheets And Other Materials Are Not Relevant To This Court's Review Of Blue Origin's Narrow Claims.

Blue Origin's third request seeks "the TEP or MEP worksheets or other supporting documents generated during the individual proposal evaluations or any of the other well-defined sub-panel concrete step evaluations." (ECF 37 at 26.) There is no basis for production of these documents, if they exist.

As discussed, persuasive authorities confirm that drafts and internal predecisional communications are excluded from the Administrative Record as a matter of law. *See Oceana*, 920 F.3d at 865. This is especially so where, as here, the presumptively complete record evidences that the evaluation documents relied on the by the agency decisionmakers are already included in the record. (AR Tab 77, Source Selection Statement at 63039 ("*To fully document its work, the SEP produced a report for each offeror containing all of the SEP's findings, ratings, and other evaluative content.* The SEP has provided these reports to me, along with a comprehensive briefing summarizing its evaluation work and conclusions."); AR Tab 35, Evaluation Plan at 61914 (showing that "the written record of NASA's final consensus agency assessment" is the SEP Report and/or SEP presentation to the SSA and any individual or subteam member initial, non-binding observations and draft findings are pre-decisional and deliberative documents that have no place in the "complete" administrative record.).)

For this reason, Blue Origin's reliance on *Tauri* is mistaken. In *Tauri*, the Court did not order the Government to add drafts and other predecisional documents to complete the record. Rather, the court determined, based on the specific facts of that case, that individual evaluator findings were a "concrete part" of the agency's established evaluation record, which transformed those individual views from the realm of deliberative rough drafts to information relied on by the decisionmakers. 99 Fed. Cl. at 481. Here, however, the initial and final determination of the NASA decisionmaker – the SSA – make plain that she relied on the SEP Report and briefings, which NASA has included in the contemporaneous record. *See Oracle Am.*, 146 Fed. Cl. at 607 ("Because the reassessment itself is in the AR, it is unnecessary to include earlier drafts of that document or informal notes."); *Gulf Grp.*, 61 Fed. Cl. at 346 (denying request for discovery of "draft documents and internal communications," where "record already contained the final determinations of the relevant decisionmakers and the contemporaneous reasons they gave in support of these decisions," and explaining that documents sought by protester "would likely not have contained additional facts or information considered by the Corps, but instead would have reflected the mental thought processes of the decisionmakers, an area into which discovery is normally not allowed in APA-style review.")

Moreover, as above, this third category of documents is not relevant to this Court's review of the claims set forth in Blue Origin's Complaint. Blue Origin vaguely asserts that "[t]hese materials are especially important to a key issue before the Court: NASA's unfair and unequal treatment and errors in its proposal evaluation." (ECF 37 at 26.) But, as explained, each of Blue Origin's specifically pled allegations – waiver of requirements, unequal discussions, funding constraints resulting in a single award – involve matters of solicitation interpretation. It is not clear, and Blue Origin does not attempt to explain, why those challenges cannot be

resolved based on the solicitation, the SpaceX proposal, and the extensive contemporaneous explanations NASA provided in the SEP Report and Source Selection Statement.

**D.     "Read Ahead" Materials Are Not Needed To Complete The Record**

Blue Origin's final request seeks "the 'Read Ahead' materials that were provided before the SEP's briefing of the SSA, which are required for a complete Administrative Record." (ECF 37 at 29.)  Blue Origin premises this request on Evaluation Plan language that describes a process where, prior to the formal briefing to the SSA, the SEP Chairperson would send to the SSA and her advisors a copy of the Draft SEP Report and, potentially, prepare an executive summary to facilitate discussion of each proposal.  (*Id.* at 26.)  Blue Origin does not even attempt to explain why these documents are relevant to this Court's review of the discrete claims raised in Blue Origin's complaint.

And, as with every other request, Blue Origin improperly seeks to "complete" the Administrative Record with predecisional and deliberative materials.  Blue Origin is plainly requesting a "Draft SEP Report" and an executive summary meant to facilitate internal deliberation, and such documents are not likely to contain additional facts not found in the briefings themselves, which the United States has produced.  *See Oracle Am.*, 146 Fed. Cl. at 607 ("Because the reassessment itself is in the AR, it is unnecessary to include earlier drafts of that document or informal notes"); *Gulf Grp.*, 61 Fed. Cl. at 346 ("Nor did the Court allow discovery of draft documents and internal communications.  The record already contained the final determinations of the relevant decisionmakers and the contemporaneous reasons they gave in support of these decisions.").

## VI. CONCLUSION

For these reasons, the Court should deny Blue Origin's motion to complete the record in its entirety. To the extent the Court later determines that additional Agency materials could assist its analysis of the issues presented, then the need for record supplementation could be revisited at that time.

Dated: September 16, 2021   Respectfully submitted,

*Of Counsel:*        ARNOLD & PORTER KAYE SCHOLER LLP
Mark D. Colley
Nathaniel E. Castellano     /s/ Kara L. Daniels
Thomas A. Pettit       Kara L. Daniels
Aime JH Joo        Arnold & Porter Kaye Scholer LLP
Arnold & Porter Kaye Scholer LLP  601 Massachusetts Ave., N.W.
601 Massachusetts Ave., N.W.   Washington, D.C. 20001
Washington, D.C. 20001    Phone: (202) 942-5768
           Fax: (202) 942-5999
           *Attorney of Record for Space Exploration*
           *Technologies Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September 2021, I caused a true and correct copy of the foregoing Response To Plaintiff's Motion To Complete The Administrative Record to be served by electronic delivery on:

Scott E. Pickens
Barnes & Thornburg, LLP (DC)
1717 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC 20006-4623
(202) 371-6349
Fax: (202) 289-1330
Email: scott.pickens@btlaw.com

*Counsel for Plaintiff*

Anthony Francis Schiavetti
U.S. Department of Justice - Civil Division
P. O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-7572
Fax: (202) 307-0972
Email: anthony.f.schiavetti@usdoj.gov

*Counsel for Defendant*

/s/  Kara L. Daniels