# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | | |
|---|---|---|
| BLUE ORIGIN FEDERATION, LLC, | ) | REDACTED VERSION |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | No. 21-1695C |
| | ) | Judge Richard A. Hertling |
| Defendant, | ) | |
| and | ) | ████████████ |
| | ) | |
| SPACE EXPLORATION TECHNOLOGIES, CORP., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## PLAINTIFF BLUE ORIGIN'S MOTION
## TO COMPLETE THE ADMINISTRATIVE RECORD

Pursuant to Rule 7 and Appendix C of the Rules of the Court of Federal Claims, Plaintiff Blue Origin Federation, LLC ("Blue Origin") respectfully files this Motion to Complete the Administrative Record ("Motion"). Plaintiff requests that the Court direct Defendant to complete the Administrative Record to add the specific categories of documents described in the accompanying Memorandum of Points and Authorities in Support of Blue Origin's Motion to Complete the Administrative Record ("Memorandum").

As set forth more fully in the accompanying Memorandum, the Administrative Record is missing specific documents. The Administrative Record is missing categories of documents that the government generated and considered during the course of its evaluation and award decision. Without completing the Administrative Record through the inclusion of the missing materials identified in the accompanying Memorandum, the Defendant's filed Administrative Record is incomplete and precludes a meaningful and effective judicial review.

WHEREFORE, Blue Origin respectfully requests that the Court GRANT this Motion.

████████████████████████████████████████████

Dated:  September 10, 2021                    Respectfully Submitted,


_____

Scott E.  Pickens
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006-4623
Phone:  (202) 371-6349
Email:  (Scott.Pickens@btlaw.com)

*Counsel of Record for Plaintiff*
   *Blue Origin Federation, LLC*


*Of Counsel:*

Scott N. Godes
Matthew J. Michaels
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006-4623

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | | |
|---|---|---|
| BLUE ORIGIN FEDERATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | No. 21-1695C |
| | ) | Judge Richard A. Hertling |
| Defendant, | ) | |
| and | ) | ██████████████ |
| | ) | |
| SPACE EXPLORATION TECHNOLOGIES, CORP., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORD

Scott E.  Pickens
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006-4623
Phone:  (202) 371-6349
Email:  (Scott.Pickens@btlaw.com)

*Counsel of Record for Plaintiff*
  *Blue Origin Federation, LLC*

*Of Counsel:*

Scott N. Godes
Matthew J. Michaels
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006-4623

███████████████████████████████████

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  QUESTION PRESENTED ................................................................................ 6

III.  STATEMENT OF FACTS ............................................................................... 6

   A.   Procedural History .......................................................................................... 6

   B.   Concrete Steps in NASA's HLS Option A Proposal Evaluation Process ...................... 8

   C.   SpaceX Failed to Meet the FRR Milestone ███████████ Requirements, But Was Selected Anyway. ....................................................................................................... 12

   D.   Unsuccessful Attempt to Resolve Dispute. .................................................. 13

IV.  LEGAL STANDARD ...................................................................................... 14

   A.   Standard for a Complete Record. ................................................................. 14

      1.   Internal Agency Emails and Communications Are Part of a Complete Record And Should Be Produced ........................................................................... 16

      2.   Evaluator Worksheets and Documents Are Also Part of a Complete Record And Should Be Produced ........................................................................... 17

   B.   The Deliberative Process Privilege Does Not Preclude Completion of the Administrative Record. .......................................................................................... 18

V.  ARGUMENT ................................................................................................... 20

   A.   NASA Should Include in the Administrative Record Internal NASA Emails and Communications Relating to NASA's FRR Requirement and Other Solicitation Requirements Alleged in the Complaint that SpaceX Failed to Satisfy. ....................... 21

   B.   Internal Emails, Responses, and Other Communications Between the SSA and Senior Advisors or SSO Members Related to the SSA's Evaluation of SpaceX's Proposal Should Be Produced. ............................................................................................................ 24

   C.   Evaluator Worksheets and Other Materials Relating to the Individual Proposal Evaluations and Other Concrete Steps Involved in NASA's Evaluation Process Should be Produced. ............................................................................................................... 26

   D.   Read-Ahead Materials Should Be Produced. ............................................... 29

VI.  CONCLUSION ............................................................................................... 30

███████████████████████████████████████████████

## TABLE OF APPENDIX

Exhibit 1        Ralph Roe email (AR Tab 67 at 62900)……………………..…..A-1, A-2, A-3

Exhibit 2        Email from S. Pickens to D. Mickle and A. Schiavetti………..A-4, A-5, A-6, A-7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon Web Services, Inc. v. U.S.*,
No. 19-1796-PEC, ECF No. 15 (Fed. Cl. Nov. 26, 2019) .............................................. *passim*

*ARKRAY USA, Inc. v. U. S.*,
No. 14-233C, 2014 WL 2905127 (Fed. Cl. Apr. 28, 2014)............................................ *passim*

*AshBritt, Inc. v. U. S.*,
87 Fed. Cl. 344 (2009) .........................................................................................15, 29

*Benebone LLC v. Pet Qwerks, Inc.*,
No. 820CV00850ABAFMX, 2021 WL 831025 (C.D. Cal. Feb. 18, 2021)...........................17

*Center for Biological Diversity v. U.S. Fish and Wildlife Service*,
2020 WL 2732340 (S.D. Fla. May 26, 2020) ...........................................................19

*Confidential Informant 59-05071 v. U.S.*,
108 Fed. Cl. 121 (2012) .......................................................................................18

*Hager Dev. Grp., LLC v. U.S.*,
No. 20-819, 2020 WL 4529817 (Fed. Cl. Aug. 5, 2020).........................................14

*Inst. for Fisheries Res. v. Burwell*,
No. 16-CV-01574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017)............................16

*Joint Venture of Comint Sys. Corp. v. U.S.*,
100 Fed. Cl. 159 (2011) .......................................................................................14

*Kerr Contractors, Inc. v. U.S.*,
89 Fed. Cl. 312 (2009), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010).........................14

*Mike Hooks, Inc. v. U.S.*,
39 Fed. Cl. 147 (1997) ....................................................................................15, 20

*New York v. Wolf*,
2020 WL 2049187 (S.D.N.Y. April 29, 2020) ........................................................19

*Oak Grove Techs., LLC v. U. S.*,
No. 21-775C, 2021 WL 3627111 (Fed. Cl. Aug. 2, 2021) ....................................14, 15

*Poplar Point RBBR, LLC v. U.S.*,
145 Fed. Cl. 489 (2019) .......................................................................................19

*Alpha I, L.P. ex rel. Sands v. U.S.*,
    83 Fed. Cl. 279 (2008) ...................................................................................18, 28

*Sikorsky Aircraft Corp. v. U.S.*,
    106 Fed. Cl. 571 (2012) ................................................................................18, 19

*Sonoran Tech. & Pro. Servs., LLC v. U.S.*,
    132 Fed. Cl. 644 (2017) ......................................................................................19

*South Carolina Coastal Conservation League v. Ross*,
    431 F. Supp. 3d 719 (D.S.C. 2020)......................................................................19

*State v. U.S. Immigration and Customs Enforcement*,
    438 F. Supp. 3d 216 (S.D.N.Y. 2020)..................................................................19

*Tauri Grp., LLC v. U.S.*,
    99 Fed. Cl. 475 (2011) ................................................................................ *passim*

*USfalcon, Inc. v. U.S.*,
    92 Fed. Cl. 436 (2010) ...........................................................................16, 26, 29

*Washington v. U.S. Dep't of Homeland Sec.*,
    2020 WL 4667543 (E.D. Wash. April 17, 2020) .................................................19

**Other Authorities**

Court of Fed. Cl. R. App'x C .................................................................................15, 17

## I.    INTRODUCTION

Plaintiff Blue Origin Federation, LLC's ("Blue Origin") bid protest action challenges NASA's award of the Human Landing System ("HLS") Option A contract to Space Exploration Technologies Corp. ("SpaceX") under Solicitation NNH19ZCQ001K_APPENDIX-H-HLS ("Solicitation").  This Court reviews NASA's procurement actions based on the Administrative Record produced by the Defendant United States ("U.S." or "NASA").  Here, the Defendant's Administrative Record is incomplete.  For reasons explained below, Blue Origin respectfully requests this Court order the Defendant to complete the Administrative Record that it filed in response to the Court's Scheduling Order in this action.

This protest challenges:  (1) NASA's decision to award a contract to SpaceX despite its noncompliance with the Solicitation's material Flight Readiness Review ("FRR") milestone requirements and other ███████████ requirements; and, (2) the pattern of unfair and unequal treatment and errors by NASA in its evaluation of SpaceX's and Blue Origin's proposals.  NASA's tendered Administrative Record, however, omits four categories of essential records that should have been included in the Administrative Record submitted in this bid protest.  These categories, detailed below, should have been included to allow for meaningful and effective judicial review of NASA's challenged actions by this Court.

First, the Administrative Record omits internal NASA e-mails and other communications relating to the Solicitation's FRR requirement and other ███████████ requirements that SpaceX's proposal failed to satisfy.  For example, as detailed below, GAO determined and the Administrative Record shows that SpaceX's proposal failed to comply with the mandatory Solicitation requirement to have one Flight Readiness Review – a key safety requirement – for

1

each launch, such that SpaceX's noncompliant proposal was unawardable. Further, the Administrative Record reveals that notwithstanding this noncompliance, which NASA itself recognized, NASA nevertheless upended its FRR requirement interpretation and initially selected SpaceX (and only SpaceX) to enter price negotiations, and then ultimately removed and replaced the Solicitation's FRR requirement for only SpaceX. Although the Administrative Record includes a handful of internal emails, the Administrative Record is conspicuously missing the NASA internal emails discussing SpaceX's FRR noncompliance and how NASA identified and handled that noncompliance. The Administrative Record is devoid of any internal NASA emails regarding the Solicitation's original FRR requirement or regarding the change in NASA's interpretation or understanding of the FRR requirement. Given the Source Evaluation Panel's ("SEP") original conclusion that: (a) SpaceX's proposal was not compliant with the Solicitation's FRR requirements; (b) NASA's "interpretation" that the Solicitation's FRR requirement could be read in more than one way; and, (c) NASA's waiver of the Solicitation's FRR requirement for SpaceX, the internal emails generated or considered by NASA regarding the Solicitation's FRR requirement are necessary for a meaningful and effective judicial review.

Similar to the FRRs, the Administrative Record omits internal NASA emails regarding other Solicitation milestone requirements ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ Such internal NASA emails on these ████████████ issues also are necessary for a complete Administrative Record.

████████████████████████████████████████████

Second, the Administrative Record omits, in whole or in part, other internal NASA emails and communications on other topics with individuals on the Source Selection Organization ("SSO") or other senior advisors outside the SSO who either were consulted or relied upon in the evaluation and award process. The Administrative Record makes clear that the opinions of members outside the SSO were solicited and considered during the evaluation process. For instance, on April 6, 2021, Ralph Roe (NASA's Chief Engineer) emailed the Source Selection Authority ("SSA") regarding ███████████████████, which is ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ (AR Tab 67 at 62900; <u>Exhibit 1</u>, hereto). The U.S. did not produce any related or follow up emails, even though this message was directed to the SSA and others. The email with Mr. Roe is one example of many individuals aside from the SSA advising on the Solicitation evaluations and award process where related discussions or communications have not been produced. As noted above, Plaintiff did not identify any internal NASA emails with the SSA on the FRR issue. As the U.S. is aware, other judges on this Court have similarly ordered the production of internal agency emails and communications for a complete administrative record. *Amazon Web Services, Inc. v. U.S.*, No. 19-1796-PEC, ECF No. 15 (Fed. Cl. Nov. 26, 2019) (U.S. represented by the same litigation counsel as here). The Administrative Record's failure to include these items that are necessary for effective and meaningful review should be remedied for a complete record.

██████████████████████████████████████

Third, the Administrative Record fails to include evaluator's worksheets, notes, drafts and other documents generated and considered throughout the Technical Evaluation sub-Panel's and Management Evaluation sub-Panel's reviews for the specific NASA-defined steps of the evaluation process. Following a compliance check, the HLS Option A evaluation process clearly tasks three evaluation panels with reviewing each offeror's proposal based on the Solicitation's three evaluation topics: Technical Evaluation sub-Panel ("TEP"), Management Evaluation sub-Panel ("MEP"), and Price Evaluation sub-Panel ("PEP"). All three evaluation panels are members of the Source Evaluation Panel ("SEP").

Each evaluation panel follows a specifically identified and defined three-track evaluation process that leads into the SEP Meeting. The first concrete step in both the TEP's and MEP's three-track process is "individual evaluation[s]" of the offerors' proposals. Following the individual evaluations, each evaluation panel's next concrete step is "comment consolidation," followed by a "consensus evaluation." The TEP and MEP evaluators were not only required to document their work, but NASA also provided explicit training on how the evaluators must document their findings, reasoning, and conclusions. Furthermore, NASA's HLS Option A evaluation plan makes clear that in the event unanimity cannot be reached or a deadlock ensues at the TEP or MEP consensus step, the subpanel lead is authorized to assign the rating.

It is well-established by this Court that individual evaluators worksheets are to be included in the Administrative Record under such circumstances because "[s]uch a concrete step takes the individual views from the realm of deliberation or 'rough draft' and places them in the category of information considered or relied upon in the decision making process." *Tauri Grp., LLC v. U.S.*, 99 Fed. Cl. 475, 481 (2011). This is true even when the agency uses a consensus approach.

Furthermore, here, where the SSA relied upon the SEP's briefing materials and does not review each offeror's proposal herself, inclusion of subordinate evaluator's documents in the Administrative Record is "particularly important." *Id.*

Not only does the Administrative Record here omit the individual evaluations, but the Administrative Record also fails to produce any of the documents included in any of the TEP or MEP sub-Panel's concrete evaluation steps that occurred prior to the SEP's Meeting. Although NASA's Option A final evaluation plan summarily states that all the sub-Panel materials are not part of "the written record," the case law makes clear that these records must be part of the Administrative Record in a Court of Federal Claims bid protest. *Id.* Therefore, this Court should require the Defendant to include the worksheets, notes and other materials generated and considered throughout at least the TEP and MEP sub-Panel concrete steps of the evaluation process for a complete Administrative Record.

Fourth, the "Read-ahead" materials that NASA's evaluation plan states the SEP Chairperson will provide to the SSA, and advisors the SSA identifies, prior to the SEP briefing were not identified in the filed Administrative Record. The "Read-ahead" materials included the draft SEP report and may include an executive summary of the offeror's proposals. These materials were indisputably generated and considered by the SSA during the evaluation process and include information provided by the technical and management evaluators, who were the primary individuals tasked with reviewing the proposals. As a result, these materials are necessary for a complete Administrative Record.

The Court should order the Defendant to include these requested evaluation documents in the Administrative Record because the documents are necessary for meaningful and effective

judicial review and also necessary to ensure Blue Origin's due process right to a review and decision based on a complete record.

## II.    QUESTION PRESENTED

The parties dispute whether NASA acted appropriately in deciding that SpaceX could be selected for award, even though an early evaluation determined that SpaceX's proposal was not compliant with Solicitation requirements, and awarding a contract to SpaceX required changes to key Solicitation flight safety and readiness requirements. NASA failed to include emails and communications discussing SpaceX's noncompliance with key Solicitation safety requirements or changes to those requirements for SpaceX, as well as individual worksheets and other documents included in the concrete steps of the evaluation process that the law requires to be included in the Administrative Record for a bid protest.

Thus, the question presented is whether the Court should require the Defendant to provide the documents that address SpaceX's noncompliant proposal in connection with the HLS Option A award decision that are necessary for effective judicial review of key issues raised by Blue Origin's claims, but which were omitted from the submitted Administrative Record.

## III.    STATEMENT OF FACTS

### A.    Procedural History.

Blue Origin filed this bid protest on August 13, 2021 alleging that NASA's selection of SpaceX for the NNH19ZCQ001K_APPENDIX-H-HLS Solicitation's Option A contract violated federal regulations, federal statutes, and its own Solicitation provisions because, in part, SpaceX's proposal was unawardable and NASA engaged in a pattern of unfair and unequal treatment in its evaluation process. (*See* Complaint, ECF No. 1). On August 19, 2021, the Court ordered the Defendant to file the Administrative Record by August 27, 2021. (*See* ECF No. 23).

On August 27, 2021, the Defendant requested the Court grant a seven-day extension to file the Administrative Record because the Administrative Record "in this case is extraordinarily voluminous, consisting of hundreds of individual documents and over seven gigabytes of data" and presented "significant challenges in process, preparing and, [] anticipate[d] filing and transmitting" to the Court and parties. (ECF No. 26 at 2). The Court granted the Defendant's motion and ordered the Administrative Record to be filed on September 3, 2021, and motions regarding the Administrative Record be filed by September 10, 2021. (*See* ECF No. 30).

On September 3, 2021, at 11:39 PM, the Defendant filed another request for enlargement of time until September 7, 2021, to produce the Administrative Record, which now included "over 1,700 documents and over 16 gigabytes of data." (*See* ECF No. 31). The Defendant represented that it would produce DVDs to the parties with the unnumbered complete record "either very late September 3, 2021, or early [Saturday] September 4, 2021." *Id.* On September 4, 2021, at approximately 1:30 AM, the Defendant provided Blue Origin a copy of the unnumbered Administrative Record. On September 7, 2021, the Defendant filed the numbered version of the Administrative Record with the Court and provided a copy to Blue Origin. (ECF No. 32).

Blue Origin's review of the Defendant's filed Administrative Record confirms that it omitted four key categories of documents that go to the heart of the claims before the Court:

1. Internal NASA emails and other communications regarding NASA's understanding and application of the Solicitation's material FRR milestone requirement ██████████████████ and SpaceX's noncompliance with the material FRR milestone requirement ███████████████ ████████

7

2. Internal NASA emails and other communications with other NASA officials and SSO members regarding factors considered during the evaluation process, including technical or other issues raised with SpaceX's proposal, beyond the FRR███████████████████;

3. Individual evaluators' worksheets, drafts, notes and other documents created during both of the TEP and MEP sub-Panels "individual evaluation" of the proposals as well as the documents generated during the "comment consolidation" and "consensus evaluation" process, as shown in Administrative Record Tab 52(c), slide 11 [AR at 62554], leading to the SEP Meeting; and

4. The Read-Ahead Materials provided before the SEP's briefing of the SSA.

**B.      Concrete Steps in NASA's HLS Option A Proposal Evaluation Process.**

As the Administrative Record shows, the concrete steps in NASA's Option A evaluation process were clearly laid out in the SEP's presentation to the SSA. (*See* AR Tab 52(c) at 62554). After a compliance check on each proposal, the evaluation process moved to three separate sub-Panels that tracked the Solicitation's three evaluation factors: (1) Technical Evaluation ("TEP"); (2) Management Evaluation ("MEP"); and (3) Pricing Evaluation ("PEP"). (*See Figure 1, id.*).

8

**Figure 1: NASA Presentation "BAA Proposal Evaluation Process Flow" for SpaceX (AR Tab 52(c) at 62554).**



Each evaluation track includes three clearly defined steps. *Id.* Both the TEP and MEP track start with an "Individual Evaluation" of each proposal by individual evaluators for each sub-Panel, followed by the second step involving individual evaluator comment consolidation. *Id.* The TEP and MEP evaluators were the "primary individuals responsible for performing and thoroughly documenting the Option A proposal evaluation" factor assigned. (AR Tab 35(d) at 61989). Furthermore, the evaluators were instructed that they "shall create findings" and were required to "fully support each finding with a narrative that supports and explains the [evaluator's] rationale, including citations to the relevant solicitation requirement(s) and those parts of the Offerors' proposal that were applicable to the finding." (*Id.*; AR Tab 35(d) at 61989). The sub-Panel evaluators were even given explicit training on how to document the observations and findings. (AR Tab 35(d) at 62012-17).

9

As shown in *Figure 1*, the final step on the TEP and MEP track is a consensus evaluation that feeds into the SEP meeting. (AR Tab 52(c) at 62554). While the HLS Option A Evaluation Process states "unanimity is required" at the TEP and MEP consensus meeting, it goes on to state that "if unanimity is not possible, the subpanel lead is authorized to select the draft adjectival rating for any non-Price factor." (AR Tab 35 at 61922, 61933 ("[I]n the event deadlock occurs on a particular rating which cannot be resolved through deliberations, the subpanel lead is authorized to select the adjectival rating for any non-Price factor in coordination with the SEP Chairperson.")). As shown in *Figure 2*, each sub-Panel track included separate evaluators assigned to review and conduct individual evaluations of each proposal as well as Subject-Matter Experts ("SME"). Each member of the sub-Panels are SEP members. (AR Tab 52(c) at 62551).

***Figure 2: NASA Presentation SSO Evaluators by Assignment (AR Tab 52(c) at 62551).***



Following the SEP Meeting, the SEP presented briefing slides to the SSA. (*See, e.g.*, AR

Tab 52(c) at 62554). However, prior to the SEP briefing with the SSA, the SEP Chairperson was to send the SSA and other senior advisors the SSA identifies "Read-ahead" materials, which included a "copy of the Draft SEP report" and may include "an executive summary" of the proposals. (AR Tab 35 at 61923).

The SSA's April 2, 2021, Memorandum regarding her initial, non-binding selection of SpaceX to enter post-selection price negotiations states she based her decision on "SpaceX's SEP Report, as well as the SEP briefings . . . regarding its evaluation for SpaceX's proposal." (AR Tab 64 at 62893). The SSA also stated she "solicited and considered the viewpoints of other senior advisors" who attended the SEP meeting. *Id*. at 62892. Similarly, in the final Source Selection Statement, the SSA stated she based her decision on the SEP provided materials. (*See* AR Tab 77 at 63043). Neither the SSA's Memorandum nor her final Source Selection Statement states that she reviewed the entirety of SpaceX's proposal or any other proposal herself. *See Id.*

NASA's "final" December 10, 2020 Option A Evaluation plan summarily states that the "written record" includes only "a SEP Report and/or a SEP presentation to the SSA; and the SSA Selection Statement." (AR Tab 35 at 61914). The evaluation plan goes on to state "Individual evaluator and/or SEP, Technical Evaluation Subpanel (TEP), Management Evaluation Subpanel (MEP), or Price Evaluation Subpanel (PEP) drafts or preliminary findings, observations, worksheets, notes, reports, briefs, electronic records, emails, etc. are considered preliminary and pre-decisional, and are therefore not a part of the written record." *Id.*

Notwithstanding the evaluation process's clear concrete steps, and this Court's precedent regarding such an evaluation process, the produced Administrative Record is devoid of the individual evaluator's worksheets, notes, drafts, or other documents generated during the

individual evaluations and each of the other concrete evaluation process steps with regard to the critical FRR issue, or indeed, any evaluation issues. Emails or records of communications among the panel evaluators are also missing from the Administrative Record.

**C.** **SpaceX Failed to Meet the FRR Milestone ███████████ Requirements, But Was Selected Anyway.**

A key issue in this case is NASA's selection of SpaceX, despite SpaceX's proposal being unawardable for failing to comply with the Solicitation's mandatory and material FRR milestone requirement, and NASA's decision to change the FRR requirement only for SpaceX. (*See* ECF No. 1). A review of the Administrative Record shows, on April 1, 2021, NASA's SEP knew and found that SpaceX's proposal was ████████████████████████████████████ ████████████████████████████████████████████████████████." (AR Tab 59(c) at 62813). Notwithstanding this determination, the next day the Contracting Officer ("CO") sent a letter to SpaceX to initiate pricing negotiations stating that the FRR requirement was "arguably ambiguous" and the SpaceX's proposal was only "arguably not consistent with all FRR milestone review requirements[.]" (AR Tab 63 at 62889-90). The Administrative Record goes on to show that NASA discarded the original FRR requirement and created a new relaxed FRR criteria for only SpaceX. (*See id.*; AR Tab 89 at 63432 ("██████████████████████████████ ████████████████████████")).

Even through the Administrative Record indicates a clear gap in reasoning and logic, and a departure from procurement rules, the only internal NASA email in the Administrative Record that mentions the FRR requirement and that Plaintiff has identified, comes five days after NASA changed the original FRR requirement language and simply confirms SpaceX's revised proposal includes FRRs as revised by NASA. (AR Tab 69 at 63012; *see also* AR Tab 35 at 61921 ("If a

12

member of the SSO finds any aspect of a proposal that either may rise to the level of a deficiency . . . or that is otherwise non-compliant with the material terms of the Option A solicitation such that the proposal may be ineligible for award, they shall immediately inform their sub-panel lead.").

Blue Origin's review of the Administrative Record has not revealed internal NASA emails addressing NASA's understanding and application of the Solicitation's FRR requirement, NASA's evaluation of SpaceX's deficient proposal for FRR noncompliance, or NASA's altered interpretation of the Solicitation's FRR requirement. Those emails or other records of NASA communications should be produced.

Furthermore, as the Complaint shows, the FRR requirement was not the only Solicitation ███████ requirement SpaceX failed to satisfy. (*See* ECF. No. 1). SpaceX also failed to satisfy ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. (*See* ECF. No. 1, ¶¶ 7, 8, 23, 24, 27, 27, 95-97). Similar to the situation for FRRs, Blue Origin's review of the Administrative Record has not revealed internal NASA emails or communications occurring during the evaluation process on these requirements, which are necessary for a complete Administrative Record.

### D. Unsuccessful Attempt to Resolve Dispute.

In an effort to forestall a dispute concerning the contents of the Administrative Record, counsel for Blue Origin coordinated with counsel for the Defendant on August 5, 2021. (*See* Aug. 5, 2021, Email from S. Pickens to D. Mickle and A. Schiavetti at Exhibit 2). Blue Origin provided the Defendant with a list of materials that should be included in the Administrative Record. *Id.* Notwithstanding these early requests, which included a number of the items now requested here,

the Administrative Record remains incomplete.

The materials Blue Origin seeks are necessary for a complete Administrative Record as they are materials that were generated and considered by NASA during the evaluation process. Furthermore, the materials sought involve key issues raised by Blue Origin's Complaint. As a result of the Defendant's refusal to include relevant and material documents in the Administrative Record, Blue Origin's only remedy is to seek the Court's involvement. *Oak Grove Techs., LLC v. U. S.*, No. 21-775C, 2021 WL 3627111, at *12 (Fed. Cl. Aug. 2, 2021) (finding that "[p]laintiffs should not have to police the government's filing as if routine discovery rules apply [in bid protests; that,] a plaintiff in a § 1491(b) action is at the mercy of the government to file a complete, certified record[; and that the government later completing the record] does not cure the harm caused by an incomplete record." (embedded items added)).

## IV.     LEGAL STANDARD

### A.     Standard for a Complete Record.

A complete administrative record that allows the Court and protester to review and analyze the claims is necessary to ensure due process and meaningful judicial review. *Hager Dev. Grp., LLC v. U.S.*, No. 20-819, 2020 WL 4529817, at *4 (Fed. Cl. Aug. 5, 2020); *see also Joint Venture of Comint Sys. Corp. v. U.S.*, 100 Fed. Cl. 159, 168 (2011) ("A complete administrative record is the predicate to meaningful and effective judicial review of agency action[.]"). To be considered "complete," the record necessarily "consists of 'all the material that w[ere] developed and considered by the agency in making its decision.'" *Oak Grove Techs.*, 2021 WL 3627111, at *11 (citing *Software Eng'g Servs., Corp. v. U.S.*, 85 Fed. Cl. 547, 552–53 (2009)); *Kerr Contractors, Inc. v. U.S.*, 89 Fed. Cl. 312, 335 (2009) ("A complete record is one that contains the information relied upon by the agency as it made its decision, as well as documentation of the agency's

14

decision-making process."), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010). Therefore, "an agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed." *Comint Sys. Corp.*, 100 Fed. Cl. at 168 (citing *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002)). Furthermore, the government "does not possess a unilateral veto" or "possess the discretion to make [the administrative records] whatever it says they are." *Oak Grove Techs.*, 2021 WL 3627111, at *9 (*citing East West*, 100 Fed. Cl. at 56).

The Court's rules contain a list of "core documents" relevant to bid protests that are considered presumptively part of the administrative record. *See* Rules of the United States Court of Federal Claims ("RCFC"). Appendix C ¶ 22; *ARKRAY USA, Inc. v. U. S.,* No. 14-233C, 2014 WL 2905127, at *4 (Fed. Cl. Apr. 28, 2014). However, as this Court has repeatedly reminded agencies, the Court's core documents list is "non-exhaustive" and, while that is where the administrative record begins, it is not where it ends. *See, e.g., ARKRAY*, 2014 WL 2905127, at *4; *Comint Sys. Corp.*, 100 Fed. Cl. at 166 ("The agency is expected to produce the core documents set forth in paragraph 22 '*and the remainder of the administrative record* as promptly as circumstances will permit.'") (emphasis in original)); *Amazon Web Services, Inc. v. U. S.*, No. 19-1796-PEC, ECF No. 15 (Fed. Cl. Nov. 26, 2019) ("The list of documents included in the court's rules, however, is not exhaustive.").

Although "the administrative record need not consist of every single document related in any way to the procurement in question," *Tauri Grp., LLC v. U.S.,* 99 Fed. Cl. 475, 481 (2011), the administrative record must reflect what "actually transpired," *AshBritt, Inc. v. U. S.*, 87 Fed. Cl. 344, 366 (2009), so as to allow for the "'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform" into bid protest's claims. *Mike Hooks, Inc. v. U.S.*, 39 Fed. Cl.

147, 156 (1997) (citing *Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823).

1.      **Internal Agency Emails and Communications Are Part of a Complete Record And Should Be Produced.**

The Court's inquiry into "why" the agency reached its conclusion "involves . . . checking to see if subjective judgments are reached elsewhere in the analysis that contradict the evaluators' conclusion . . . making the decision too 'implausible.'" *USfalcon, Inc. v. U.S.,* 92 Fed. Cl. 436, 462 (2010).

As a result, it is not uncommon for the complete administrative record to require the inclusion of internal agency emails, notes, and communications, especially where the material or communications involve an "agency's understanding and application of [a solicitation] requirement" or other "key issues" in the case. *E.g.*, *ARKRAY,* 2014 WL 2905127, at *5 (ordering the production of internal emails and notes to complete the administrative record because the materials were either "generated or considered by the agency" and were "relevant to the key issue in t[he] case: the agency's understanding and application of the TAA requirement"); *Tauri Grp., LLC,* 99 Fed. Cl. at 482 (ordering additional emails be included in the complete administrative record as it "would . . . either contain information considered by the Cost Team [of evaluators], or place that information in context."); *Inst. for Fisheries Res. v. Burwell*, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) ("[I]n many cases internal comments, draft reports, inter– or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision."). As the Defendant and its counsel in this action are aware, recently, in *Amazon Web Services, Inc. v. United States*, a judge of this Court explicitly stated in the scheduling order that, "[i]n addition to the core documents identified in Appendix C, the record should include any informal documents reflecting factors considered in the agency's decision-making process,

16

such as email communications and communications made through Slack[1] channels and the like."

*Amazon Web Services, Inc.*, No. 19-1796-PEC, ECF No. 15 (Fed. Cl. Nov. 26, 2019).

The inclusion of internal agency emails necessary for a complete administrative record can include communications among evaluators, even when there is a consensus decision. *See, e.g.*, *Tauri Grp., LLC*, 99 Fed. Cl. at 482 (requiring that internal communications between sub-Panel's designated to evaluate the proposals be produced for a complete record). Furthermore, where the materials, including internal agency communications, "relate to [the awardee's] compliance with the [Solicitation's] requirement, there is simply no rational reason to exclude them when they complete the record." *ARKRAY*, 2014 WL 2905127, at *5.

### 2. Evaluator Worksheets and Documents Are Also Part of a Complete Record And Should Be Produced.

Similarly, it is well-recognized that worksheets, documents, and notes regarding certain individuals involved and consulted through the evaluation or selection process must be part of the administrative record. *See Tauri Grp., LLC*, 99 Fed. Cl. at 481; RCFC App'x C ¶ 22(n). First, individual evaluator worksheets, notes, and other documents are to be included in the administrative record when "individual evaluations were a concrete step in the technical process." *Tauri Grp., LLC*, 99 Fed. Cl. at 481 (ordering worksheets and internal agency emails be included). The individual evaluators' involvement in "[s]uch a concrete step takes the individual views from the realm of deliberation or 'rough drafts' and places them in the category of information considered or relied upon in the decision making process." *id.* (emphasis added). This is true even

---

[1] "Slack" is an internal messaging platform that companies, public and private, use to send messages and files to each other. *See, e.g.*, *Benebone LLC v. Pet Qwerks, Inc.*, No. 820CV00850ABAFMX, 2021 WL 831025, at *1 (C.D. Cal. Feb. 18, 2021) (explaining that "Slack is a cloud-based software system that allows an entity to organize its electronic discussions" and can be used in addition to "standard email, for [an entity's] internal communications").

if the agency uses of a consensus approach. *Id.* Second, when the SSA relies on briefings instead of her own review of the proposals, it is "particularly important" the Administrative Record include "documents supporting the decisions of subordinate evaluators." *Id.* Third, where the SSA involves officials outside the evaluation team, the outside official's evaluation and opinions must also be included in the Administrative Record. *Id.*

**B.     The Deliberative Process Privilege Does Not Preclude Completion of the Administrative Record.**

To the extent the Defendant has withheld or intends to withhold certain responsive documents requested by the Plaintiff here, based on the "deliberative process" privilege, the deliberative process privilege is narrowly construed and it is the Defendant's burden to prove it timely satisfied the procedural and substantive requirements. *Alpha I, L.P. ex rel. Sands v. U.S.*, 83 Fed. Cl. 279, 288 (2008) ("The party seeking to invoke the deliberative process privilege has the burden of justifying its application . . . and the privilege is to be construed narrowly."); *see also Confidential Informant 59-05071 v. U.S.*, 108 Fed. Cl. 121, 134 (2012). For instance, the deliberative process privilege does not cover purely factual information. *Sikorsky Aircraft Corp. v. U.S.*, 106 Fed. Cl. 571, 576 (2012). Furthermore, a simple blanket assertion that a document is subject to the "deliberative process privilege is insufficient." *Alpha I, L.P.*, 83 Fed. Cl. at 289.

Additionally, and importantly as applied in bid protest cases, the deliberative process privilege is a qualified privilege, not an absolute privilege. *Sikorsky Aircraft Corp.*, 106 Fed. Cl. at 577; *see also Tauri Grp., LLC*, 99 Fed. Cl. at 481 (evaluators involved in a concrete step of the individual evaluation "take the individual views from the realm of deliberation . . . and place them in the category of information considered or relied upon in the decision making process"). As with other privileges, even where applicable, "[t]he privilege may 'be defeated by a showing of evidentiary need by [a] plaintiff[] that outweighs the harm that disclosure of such information may

18

cause to the defendant.'" *Sikorsky Aircraft Corp.*, 106 Fed. Cl. at 577.

Moreover, where the government elects to assert the deliberative process privilege to prevent inclusion of materials in the administrative record, the government is generally required to produce a privilege log or to submit the documents to the court *in camera* for review. *See, e.g.*, *Poplar Point RBBR, LLC v. U.S.*, 145 Fed. Cl. 489, 493 (2019); *Sonoran Tech. & Pro. Servs., LLC v. U.S.*, 132 Fed. Cl. 644, 649 (2017) (ordering an *in camera* review and that the Government "shall accompany these documents with a privilege log" to the court); *ARKRAY*, 2014 WL 2905127, at *5; *see also e.g.*, *Center for Biological Diversity v. U.S. Fish and Wildlife Service*, 2020 WL 2732340 (S.D. Fla. May 26, 2020) (APA case granting plaintiff's motion to compel production of a privilege log in justifying any claims of privilege for withheld documents); *New York v. Wolf*, 2020 WL 2049187 (S.D.N.Y. April 29, 2020) (APA case upholding prior order requiring defendants to produce a privilege log of any documents withheld from the administrative record on the basis of privilege); *Washington v. U.S. Dep't of Homeland Sec.*, 2020 WL 4667543 (E.D. Wash. April 17, 2020) (APA case granting plaintiffs' motion to compel defendant agency to produce a privilege log where plaintiffs pointed to indications that the agency relied on materials it did not produce as part of the record); *State v. U.S. Immigration and Customs Enforcement*, 438 F. Supp. 3d 216 (S.D.N.Y. 2020) (APA case granting plaintiff's motion to compel defendants to produce a log of deliberative documents withheld from the administrative record on the basis of asserted privilege); *South Carolina Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719 (D.S.C. 2020) (same).

In the context of Blue Origin's motion here, where "a party seeks to add evidence to the record that consists of [internal agency emails] and materials that were generated or considered by the agency during the procurement and decision[]making process" and are probative of "key

issues" raised by plaintiff, "the court will ordinarily order the agency to complete the administrative record by adding pre-award records." *ARKRAY*, 2014 WL 2905127, at *4; *see also Tauri Grp., LLC*, 99 Fed. Cl. at 482. As such, the Court should order the Defendant to produce the requested materials as necessary for the "'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform" regarding the issues raised by Blue Origin's claims. *Mike Hooks, Inc.*, 39 Fed. Cl. at 156 (*citing Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823).

## V.    ARGUMENT

The defendant's Administrative Record is incomplete as it omits materials generated and considered by NASA during the evaluation and award process. The Administrative Record omits four items that are necessary for, and traditionally included in, a *complete* Administrative Record. First, the Administrative Record fails to include internal NASA emails or record documenting communications (*e.g.*, internal communication platform records) regarding NASA's understanding, interpretation or application of the Solicitation's FRR requirement ███████ ███████████████ during the evaluation process or award process, even though NASA determined that SpaceX's proposal was noncompliant with the Solicitation on that issue and then awarded a contract to SpaceX anyway. Second, the Administrative Record fails to include emails and other communications, including responses, with members of the SSO and other NASA senior advisors that advised and were consulted during the Solicitation's evaluation and award process. Third, the Administrative Record excludes evaluator worksheets and other documents that should have been included in the Administrative Record. Fourth, the "Read-ahead" materials that NASA's evaluation plan states the SEP Chairperson will provide to the SSA and advisors the SSA identifies prior to the SEP briefing were not identified in the filed Administrative Record.

A. **NASA Should Include in the Administrative Record Internal NASA Emails and Communications Relating to NASA's FRR Requirement and Other Solicitation Requirements Alleged in the Complaint that SpaceX Failed to Satisfy.**

As noted above, NASA made a contract award to SpaceX after determining that SpaceX's proposal was not compliant with the Solicitation's FRR requirements. To make that award, NASA ultimately changed critical flight safety and readiness requirements just for SpaceX, but NASA did not include a single email or set of notes discussing that change of position in the Administrative Record. Although the Administrative Record includes one internal NASA email referencing that SpaceX belatedly included a modified FRR requirement as directed by NASA after NASA made its conditional selection of SpaceX, (*See* AR Tab 69 at 63011-12), it does not include any internal NASA emails regarding NASA's understanding or application of the original FRR requirement during the evaluation or award process prior to or after this email. Nor does the Administrative Record included any internal NASA emails discussing the new modified and relaxed FRR requirement language crafted specifically and only for SpaceX.

The absence of these documents is inexplicable, and their omission should interest the Court. Included within that same omission is a failure to include any emails or other communications among, between or including the TEP, MEP, or PEP sub-Panels regarding the FRR requirement during the evaluation process, which served as the basis for the SEP report materials provided to the SSA.

This is important because the FRR requirement and SpaceX's noncompliance with it are key issues in this case and the Administrative Record shows that the SEP materials provided to the SSA found that SpaceX's proposal was "not in accordance with" and was "inconsistent" with any interpretation of the Solicitation's FRR "required milestone review activities." (AR Tab 59(c) at 62813). Such a failure makes SpaceX's proposal unawardable. Notwithstanding the SEP's

21

findings, which were based upon the three sub-Panel's supporting materials and months' worth of evaluations, there are no FRR-related documents, as explained above.  Moreover, the Contracting Officer sent a letter making an initial, nonbinding selection of SpaceX and stating that the Solicitation's FRR requirement was "arguably ambiguous" and that SpaceX's proposal was only "arguably not consistent with all FRR milestone review requirements[,]" but the Defendant did not include any internal email communications relating to the issuance of the letter or the letter's language stating that SpaceX's proposal was "arguably" not compliant with the Solicitation.  (AR Tab 63 at 62889-90).  Furthermore, the letter discards the Solicitation's existing mandatory FRR requirement and instead creates a brand new limited FRR requirement designed just for SpaceX (and only SpaceX) to permit a revised proposal.  *See id*.  But the Defendant did not include any internal communications or similar documents explaining where the relaxed "SpaceX only" FRR requirement came from during the evaluation process.

The failure to include internal NASA emails regarding the FRR requirement is the tip of the iceberg.



Furthermore, based upon the NASA evaluation plan, such communications regarding the FRR should exist.  (*See, e.g.*, AR Tab 35 at 61921 ("If a member of the SSO finds any aspect of a proposal that either may rise to the level of a deficiency . . . , or that is otherwise non-compliant with the material terms of the Option A solicitation such that the proposal may be ineligible for award, they shall immediately inform their sub-panel lead.")).

All internal NASA emails and communications generated and considered during the

evaluation process regarding NASA's understanding and waiver of the Solicitation's mandatory FRR requirement ████████████████████ included in the Complaint are needed for a complete Administrative Record. This Court's precedent supports Blue Origin's request for inclusion of such materials in the Administrative Record. The court in *Tauri* evaluated a similar situation and found that internal agency sub-Panels' communications were necessary for a complete record. In *Tauri*, the Source Selection Plan divided the review up into sub-teams by topic to conduct individual proposal reviews. *Tauri Grp., LLC*, 99 Fed. Cl. at 478. There the court found that internal agency email communications regarding materials provided to the SSA were necessary for effective judicial review because the communications "contained information considered" by the panel putting the materials together "**or** place[d] that information into context." *Id.* at 482 (emphasis added). Similar to the *Tauri* case, the emails between evaluators, and among the three sub-Panels here are necessary for a complete record as they were "considered" by the SEP or at least "place in context" the SEP's findings, interpretation and application of the Solicitation's FRR requirement and other milestone requirements that were provided to and relied upon by the SSA.

Additionally, the *ARKRAY* opinion is also instructive where, as here, the internal agency communications involve a material solicitation requirement. In *ARKRAY*, the plaintiff alleged that the agency "should have eliminated [the awardee] from consideration" for failing to comply with the solicitation's Trade Agreement Act (TAA) requirement and sought to complete the Administrative Record with "internal agency communications" regarding the TAA requirement. *ARKRAY*, 2014 WL 2905127, at *1. After conducting an *in camera* review of the documents, the court found additional materials, including an internal agency email, were "necessary to *complete* the administrative record" because the documents were "generated or considered" during the

procurement and decision making process and "relevant to the key issue in th[e] case: the agency's understanding and application of the TAA requirement." *Id.* at *5.

Because the internal NASA communications here "relate to [SpaceX's] compliance with the [Solicitation's FRR ███████████ requirement[s], there is simply no rational reason to exclude them when they complete the record." *ARKRAY*, 2014 WL 2905127, at *5. Furthermore, under the circumstances through which NASA completed its evaluation, the communications are necessary for effective judicial review because they were considered or "place [the SSA's reliance materials] in context[.]" *Tauri Grp., LLC*, 99 Fed. Cl. at 482; 481 ("An SSA is free to base his or her judgment on the evaluations and ratings of others, . . . but in doing so makes the judgments of those other officials relevant to a court's review—as that is where the facts were found and the connections to conclusions articulated. Like a calculus examination, what matters is not just the answers but the proofs"). *See also Amazon Web Services, Inc.*, No. 19-1796-PEC, ECF No. 15.

Therefore, Blue Origin requests that the Court order that internal NASA emails and communications specifically relating to the FRR requirement ███████████ listed in the Complaint be produced and included in the record as they are necessary for a complete Administrative Record.

**B.** **Internal Emails, Responses, and Other Communications Between the SSA and Senior Advisors or SSO Members Related to the SSA's Evaluation of SpaceX's Proposal Should Be Produced.**

The SSA's April 2, 2021, Memorandum states that she "solicited and considered the viewpoints of other senior advisors" who attended the SEP meeting. (AR Tab 64 at 62892). The documents provided indicate that a few, but not all, communications between the SSA and senior advisors related to her SpaceX evaluation have been included in the Administrative Record.

For example, the Administrative Record includes an email to the SSA from NASA Chief

24

Engineer Ralph Roe. (*See* AR Tab 67 at 62900; <u>Exhibit 1</u>, hereto.). Mr. Roe is not listed as a member of the SSO (*See Figure 2*, *supra*); however, in his email, ██████████████████ ██████████████████████████████████:



*Id*. (emphasis added). The Administrative Record does not include any response from the SSA or internal communications with other SSO members on Mr. Roe's concern.

Because the Administrative Record shows that the SSA solicited opinions and feedback from other senior advisors outside the SSO, the content of Mr. Roe's email indicates that there are likely additional communications in response to that email (such as a reply from the SSA or the cc's), as well as other similar internal agency communications between and among the SSA, the SSO, or other senior advisors ████████████████████████.[2] The opinions and advice of senior advisors were considered by, and factored into, the SSA's selection

---

[2] The Administrative Record also includes an email from Altonell Mumford to Mark Kirasich and the SSA stating, "Looping in Kathy to the thread. . . . The three of us can tag before we meet with Vanessa [Wyche], Greg [Robinson], and Alex [MacDonald]." (AR Tab 55 at 62602). The Administrative Record does not include information relating to the meeting between Altonell Mumford, Mark Kirasich, and the SSA, nor the follow up meeting with the three other individuals mentioned who are not SSO members. Additionally, the Solicitation's final evaluation plan states that the CO is to ████████████████████████████████████████████ ████████████████ (AR Tab 35 at 61916-17). Therefore, there must be communications between the CO and MEP on this and other evaluation issues. However, none of this information was identified in the Administrative Record.

of SpaceX for post-selection negotiations, and any related internal agency communications were developed and considered by NASA in making its award decision.  These materials should be produced and included in the record.

Requiring the inclusion of internal agency emails in the Administrative Record is not a novel requirement and should not come as a surprise to the Defendant.  As the Defendant is well aware, another judge on this Court recently ordered the government to include in the complete administrative record "any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through [the agency's internal messaging platform] channels and the like."  *Amazon Web Services, Inc.* , No. 19-1796-PEC, ECF No. 15.

Therefore, any internal communications, including emails, responses, and other messages between and among the SSA, senior advisors or other members of the SSO regarding factors considered in the agency's decision-making process or evaluation of SpaceX's proposal are a critical component of a complete administrative record and should be produced and included.

**C.      Evaluator Worksheets and Other Materials Relating to the Individual Proposal Evaluations and Other Concrete Steps Involved in NASA's Evaluation Process Should be Produced.**

The Administrative Record does not include any of the TEP or MEP worksheets or other supporting documents generated during the individual proposal evaluations or any of the other well-defined sub-Panel concrete evaluation steps.

These materials are especially important as they go directly to a key issue before the Court: NASA's unfair and unequal treatment and errors in its proposal evaluations.  *See USfalcon, Inc.*, 92 Fed. Cl. at 462 (recognizing the Court inquiries includes "checking to see if subjective judgments are reached elsewhere in the analysis that contradict the evaluators' conclusion . . .

26

making the decision too 'implausible.'").  Based on how NASA executed its proposal evaluations, these materials are required for a complete record and are necessary for a meaningful and effective judicial review.

As the Administrative Record shows, NASA divided the review of the proposals into three separate topics tracking the Solicitation's three evaluation factors.  (*See Figure 1*, AR Tab 52(c) at 62554).  Following a compliance check, each of the three sub-Panel tracks involve three separate concrete steps in the evaluation process.  *Id.*  The TEP and MEP evaluators' three step tracks begins with an "Individual Evaluation" of each proposal.  The TEP and MEP evaluators were required to properly document their findings, observations, and conclusions throughout the evaluations and they were specifically educated in the kickoff meeting on how to do that.  (AR Tab 35(d) at 61989; AR Tab 35(d) at 61989, 62012-17).  After conducting the individual evaluations, the TEP and MEP tracks moved to a comment consolidation step and then to the "consensus evaluation" step.  *See Figure 1*, AR Tab 52(c) at 62554.  If unanimity is not reached or a deadlock ensues, the sub-Panel lead selects the rating for the TEP and MEP consensus evaluation, which leads into the SEP meeting.  All documents relating to these steps should be produced.

Importantly, the SSA, Kathy Lueders, did not base her decision on her own review of the individual offeror's proposals.  (*See* AR Tab 64, AR Tab 77).  Instead, the Administrative Record is clear that she based her decision on the SEP reports and SEP briefings.  *Id.*  Given the actual proposal evaluation process that transpired and the SSA's decision to not review each of the proposals herself, the sub-Panels' materials are necessary for a complete Administrative Record. *See Tauri Grp., LLC*, 99 Fed. Cl. at 481 (2011).

Any attempt by the Defendant to withhold the three sub-Panel's worksheets and other

27

documents by relying upon the December 10, 2020 Option A Evaluation plan stating that the sub-Panels' "drafts or preliminary findings, observations, worksheets, notes, reports, briefs, electronic records, emails, etc." are "not part of the written record" is misguided and unsustainable. This Court's precedent makes clear that these records must be part of the Administrative Record in a Court of Federal Claims bid protest based on the way NASA's evaluation process was established and executed in this procurement. *See id.*

Additionally, to the extent Defendant attempts to claim the materials are covered by the qualified deliberative process privilege, that claim too must fail under the circumstances for at least three reasons. *First*, Defendant must show the agency timely satisfied the procedural and substantive requirements to claim such privilege is applicable. A blanket assertion of items as covered by deliberative process privilege is insufficient. *See Alpha I, L.P.*, 83 Fed. Cl. at 289.

*Second*, in a bid protest, the case law makes clear that the way NASA structured its evaluation and decision-making process removes these materials from the "deliberative process" privilege realm. *See Tauri Grp., LLC*, 99 Fed. Cl. at 481 (When "individual evaluations [are] a concrete step in the technical evaluation process . . . [it] **takes the individual views from the realm of deliberation or "rough drafts" and places them in the category of information considered or relied upon** in the decision making process.). As the court in *Tauri* held, Ms. Lueders was "free to base . . . her judgment on the evaluations and ratings of others, . . . but in doing so makes the judgments of those other officials relevant to a court's review—as that is where the facts were found and the connections to conclusions articulated." *Id.*

*Third*, Blue Origin's need outweighs the harm of disclosing such information. The evaluator's worksheets and other documents are directly relevant to Blue Origin's claims regarding NASA's unfair and unequal evaluation process. Therefore, the materials are directly related to the

Court's inquiry, which "involves . . . checking to see if subjective judgments are reached elsewhere in the analysis that contradict the evaluators' conclusion . . . making the decision too 'implausible.'" *USfalcon, Inc.*, 92 Fed. Cl. at 462. Additionally, any harm that may result in disclosure of purportedly privileged material in a non-bid protest case is diminished here because the strict protective order in place for bid protests can prevent misuse of such materials if the information otherwise qualifies for protection. Most importantly, however, the records are necessary to serve the purpose underlying Blue Origin's due process right to a complete record ensuring that what the Court rules on "reflect[s] what 'actually transpired.'" *AshBritt, Inc.*, 87 Fed. Cl. at 366. As the Court in *Tauri* held, "like a calculus examination, what matters is not just the answers but the proofs." *Tauri Grp., LLC*, 99 Fed. Cl. at 481. As such, these materials are necessary for a complete Administrative Record and should be produced.

### D. Read-Ahead Materials Should Be Produced.

The Administrative Record does not include the "Read-ahead" materials that were provided before the SEP's briefing of the SSA which are required for a complete Administrative Record.

The HLS Option A final evaluation plan explicitly states:

> Ahead of the briefing to the SSA, the SEP Chairperson sends the SSA, and any other individuals identified by the SSA as advisors, **a copy of the Draft SEP Report**. The SEP may also create **an executive summary** of each Offeror's proposed technical capabilities, management capabilities, and/or associated pricing ahead of the briefing so as to facilitate discussion about the merits of each proposal during the SSA briefing meeting.

(AR Tab 35 at 61923) (emphasis added). These materials were indisputably generated and considered during the evaluation process, but Plaintiff's review of the Administrative Record did not reveal a "copy of the Draft SEP Report" or an "executive summary" provided to the SSA or

29

other advisors.[3]

Since the SEP report is not considered "final" until "adopted by the SSA," (AR Tab 35 at 61923), the Read-ahead materials, including the Draft SEP Report and any executive summary, comprise a separate concrete step in the evaluation process that includes materials not encompassed by the "final" SEP Report.  The SEP includes the technical evaluators who were the primary individuals tasked with reviewing each proposal.  Therefore, the information included in any report that includes input from these individuals must be included in the Administrative Record.

**VI.    CONCLUSION**

Based on the forgoing, Blue Origin respectfully requests that this Court require Defendant produce the following:

1.  Internal NASA emails and other communications regarding NASA's understanding and application of the Solicitation's material FRR milestone requirement ██████ ███████████ and SpaceX's noncompliance with the material FRR milestone requirement ████████████████████ (*See* Section V(A), *supra*);

2.  Internal NASA emails and other communications with other NASA officials and SSO members regarding factors considered during the evaluation process, including technical or other issues raised with SpaceX's proposal, beyond the FRR ███████ ██████ requirements (*See* Section V(B), *supra*);

3.  Individual evaluators' worksheets, drafts, notes and other documents created during

---

[3] The Administrative Record reflects that the SSA consulted with NASA senior advisors who attended the SEP meeting.

both the TEP and MEP sub-Panels "individual evaluation" of the proposals as well as the documents generated during the "comment consolidation" and "consensus evaluation" process, as shown in AR Tab 52(c) at 62554, leading to the SEP Meeting (*See* Section V(C), *supra*);

4. The Read-Ahead Materials provided before the SEP's briefing of the SSA (*See* Section V(D), *supra*); and

5. A privilege log for any documents relating to any responsive documents that have been withheld on the grounds of any privilege (*See* Section IV(B), *supra*).

In the alternative, consistent with the case law cited above, Blue Origin requests that the Court order that the Defendant submit the materials requested in this motion to the Court for *in camera* review and evaluation for inclusion in a complete Administrative Record.

Dated: September 10, 2021.                    Respectfully Submitted,

By: _____

Scott E. Pickens
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006-4623
Phone: (202) 371-6349
Email: (Scott.Pickens@btlaw.com)

*Counsel of Record for Plaintiff*
    *Blue Origin Federation, LLC*

*Of Counsel:*
Scott N. Godes
Matthew J. Michaels
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006-4623

31