REDACTED VERSION

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

|  |  |
|---|---|
| BLUE ORIGIN FEDERATION, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) Case No. 1:21-cv-01695-RAH <br> ) Judge Richard A. Hertling |
| Defendant, | ) |
| and | ) |
| SPACE EXPLORATION TECHNOLOGIES CORP., | ) |
| Defendant-Intervenor. | ) |

**MEMORANDUM OF LAW IN SUPPORT DEFENDANT-INTERVENOR'S MOTION TO STRIKE THE DECLARATION OF DR. ALAN WILHITE AND THE DECLARATIONS OF BLUE ORIGIN'S EXECUTIVES, AND THE STATEMENTS IN PLAINTIFF'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD RELYING THEREON**

Dated:   October 13, 2021

*Of Counsel:*
Mark D. Colley
Nathaniel E. Castellano
Thomas A. Pettit
Aime JH Joo
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Kara L. Daniels
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone:  (202) 942-5768
Fax:  (202) 942-5999
*Attorney of Record for Space Exploration Technologies Corp.*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. QUESTIONS PRESENTED .......................................................................................... 2

III. STATEMENT OF FACTS ............................................................................................. 3

IV. STANDARD OF REVIEW ............................................................................................ 4

V. ARGUMENT .................................................................................................................. 6

    A. Blue Origin Has Not Moved To Supplement The Record With Dr. Wilhite's Declaration And Cannot Meet The High Burden Required To Do So Here .................................................................................................................... 6

    B. Blue Origin Has Not Moved To Supplement The Administrative Record Or This Court's Record With The Declarations Of Blue Origin's Executives, and These Declarations Contain Numerous Inadmissible Statements, Opinions, and Speculation Precluding Their Use For Any Judicial Fact Finding. ........................................................................................... 7

        1. Inadmissible and Irrelevant Statements in Mr. Smith's Declaration ........... 9

        2. Inadmissible and Irrelevant Statements in Mr. Sherwood's Declaration .................................................................................................. 14

VI. CONCLUSION ............................................................................................................. 16

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Accord Camp v. Pitts*,
   411 U.S. 138, 142 (1973)..................................................................................................5

*AgustaWestland N. Am. Inv. v. United States*,
   880 F.3d 1326 (Fed. Cir. 2018)......................................................................................4, 5

*Axiom Resource Mgmt. Inc. v. United States*,
   564 F.3d 1374, 1379-80 (Fed. Cir. 2009) ......................................................................5, 7

*Banknote Corp. of Am. v. United States*,
   365 F.3d 1345 (Fed. Cir. 2004)..........................................................................................6

*Bendix Corp. v. United States*,
   220 Ct.Cl. 507, 600 F.2d 1364 (1979)...............................................................................8

*Command Mgmt. Servs., Inc. v. United States*,
   111 Fed. Cl. 279, 285 n.5 (2013) .......................................................................................5

*DataMill, Inc. v. United States*,
   91 Fed. Cl. 722 (2010) .................................................................................................9, 15

*Kvichak Marine Indus., Inc. v. United States*,
   118 Fed. Cl. 385 (2014) .....................................................................................................5

*Orion Tech., Inc. v. United States*,
   101 Fed. Cl. 492 (2011) .....................................................................................................7

*PlanetSpace, Inc. v. United States*,
   90 Fed. Cl. 1 (2009) ...........................................................................................................7

*PTC, Inc. v. United States*,
   143 Fed. Cl. 770 (2019) .....................................................................................................5

*Raytheon Co. v. United States*,
   121 Fed. Cl. 135, *aff'd*, 809 F.3d 590 (Fed. Cir. 2015) ....................................................5

**STATUTES**

5 U.S.C. § 706......................................................................................................................4

**OTHER AUTHORITIES**

Federal Rule of Evidence 602..............................................................................................8

Federal Rule of Evidence 701 ................................................................................................... 8

Federal Rule of Evidence 1001 ................................................................................... 8, 9, 10, 13

Federal Rule of Evidence 1002 ................................................................................... 8, 9, 10, 13

Federal Rule of Evidence 1004 ................................................................................... 8, 9, 10, 13

**I.     INTRODUCTION**

Defendant-Intervenor Space Exploration Technologies Corp. ("SpaceX") respectfully moves this Court to strike the declarations of Dr. Alan W Wilhite, Robert H. Smith, and Brent Sherwood, submitted with the Plaintiff's Cross-Motion for Judgment on the Administrative Record ("MJAR") (ECF 61-1 at A-1 through A-42), and the statements in the Blue Origin Federation, LLC ("Blue Origin") MJAR relying on the inadmissible, extra-record statements.

The schedule and record for this bid protest have been a matter of considerable discussions between the parties and the Court.  Blue Origin elected to proceed with moving for judgment on the Administrative Record without ever seeking to supplement that record or expand the case more broadly to offer non-record evidence, despite the scheduling order expressly addressing the timing for such a motion.

Even had Blue Origin sought to supplement the record, Dr. Wilhite's declaration fails to meet the high standard required for supplementation.  This declaration, which purports to re-evaluate SpaceX's proposal and disagrees with the independent judgments of the Source Selection Authority ("SSA"), is neither legally relevant nor factually accurate, and is not necessary to enable the Court to review the questions of law fundamental to Blue Origin's claims.

Similarly, Blue Origin has not sought to supplement the Administrative Record or the Court's record with the declarations of its Chief Executive Officer (Mr. Smith) and its Senior Vice President (Mr. Sherwood).  Blue Origin's MJAR likewise offers no explanation or rationale that permits the Court to accept these declarations as facts; they are simply attached and relied upon.  (ECF 61-1 at *passim*.)  In addition, as described below, the declarations contain numerous legally inadmissible statements and opinions, many of which are contradicted by the Administrative Record.

Further, given the substantial record facts contradicting Blue Origin's farcical theory that it could have submitted a viable alternative proposal with a substantial chance for award (ECF 62 at 32-38, ECF 60 at 43-46), and the internally inconsistent theories espoused by Blue Origin's declarants, the Court should not consider these out-of-court statements or afford them any presumption of good faith, completeness, or objectivity. These declarations are not supported by any contemporaneous documentation and the assertions made have not been tested through cross-examination. It is simply too late for Blue Origin to propose such questionable record expansion.

For these reasons, SpaceX respectfully requests that the Court not consider the declarations attached to Blue Origin's MJAR and strike the statements in Blue Origin's MJAR relying on those statements.

## II.     QUESTIONS PRESENTED

1.     Should Blue Origin be permitted to rely on extra-record declarations to support its MJAR merits arguments where (a) the parties negotiated a schedule with designated time for Blue Origin to seek to supplement and complete the record, (b) during that designated period Blue Origin never sought to supplement the Administrative Record or this Court's record with the extra-record declarations at issue, and (c) the declarations attached to Blue Origin's MJAR are not necessary for this Court's effective review of Blue Origin's claims so as to warrant supplementation of the administrative record?

2.     Alternatively, even if Blue Origin can make a showing that extra-record evidence from its two corporate executives is warranted for prejudice or harm, should the Court strike those paragraphs of the declarations (and the aspects of Blue Origin's Cross-MJAR that rely on those paragraphs) containing inadmissible or irrelevant statements and opinions?

III.  **STATEMENT OF FACTS**

As reflected in the August 19, 2021 Joint Status Report (ECF 22), the parties mutually agreed on an aggressive schedule to brief and argue this bid protest before NASA's voluntary stay of performance expires on November 1, 2021.  In anticipation of potential disputes over the contents and scope of the record that the Court would review, the parties' proposed schedule, adopted by the Court, included a specific time frame for Blue Origin to "File[] Any Motions Regarding Contents of the Administrative Record." (*Id.* at 1; ECF 23 at 1.)  The reason for doing so is manifest: ensure the Court had an opportunity to hear and resolve disputes relating to the administrative record *before* the parties filed their simultaneous cross-motions for judgment on that record.

Blue Origin did file a motion objecting to the administrative record.  Specifically, Blue Origin filed a motion to *complete* the administrative record with four specific categories of documents.  (ECF 37.)  As the Court is well aware, SpaceX and the United States responded to Blue Origin's motion to complete, and the Court held oral argument on that same issue, denying Blue Origin's motion.  (ECF 45.)

Blue Origin did not and has not filed a motion to *supplement* the administrative record. Yet, Blue Origin's MJAR relies on *more than forty* pages of attached declarations from Blue Origin Chief Executive Officer Bob Smith, Senior Vice President Brent Sherwood, and paid consultant Dr. Alan Wilhite.  (ECF 61-1 at A-1 to A-42.)  These declarations are woven throughout essentially all aspects of Blue Origin's MJAR.  (*Id.* at *passim.*)  As detailed in the argument that follows, these declarations are not limited to issues of prejudice and entitlement to injunctive relief.  For example, Mr. Smith opines as to the purpose of the Option A BAA milestone reviews, an issue directly tied to the merits of Blue Origin's argument that SpaceX

3

failed to propose compliant milestone reviews.  (*Id.* at A-4 to A-5.)  Mr. Smith also discusses Blue Origin's proposal and evaluation results for the base year of performance, even though Blue Origin never sought to have those base year evaluation materials added to the Administrative Record, and has not even provided those documents to substantiate Mr. Smith's declaration.  (*Id.* at A-7 to A-9.)  Mr. Sherwood also provides lay testimony as to his understanding of the milestone reviews and Blue Origin's base year proposal and evaluation, without substantiating materials.  (*Id.* at A-14 to A-19.)  Even where the declarations purport to address prejudice or harm, the statements made directly contradict the record documents (e.g., Mr. Smith's contentions about Blue Origin's base period proposal and Option A proposal (*id.* at A-7 to A-8), or are internally inconsistent—claiming they would have proposed a different, lower cost solution without partners (*id.* at A-9 to A-10, A-11, A-17), yet claiming the loss of the National Team partners as purported irreparable harm (*id.* at A-20 to A-21).  The Wilhite declaration essentially re-evaluates SpaceX's proposal, opining as to how Dr. Wilhite might grade SpaceX against the Option A BAA milestone review provisions and other considerations, and disagreeing with the SSA's documented judgments. (*Id.* at A-23 to A-42.)

## IV. STANDARD OF REVIEW

When reviewing a bid protest, this Court applies the "appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *AgustaWestland N. Am. Inv. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (citation omitted) (holding supplementation of agency record was abuse of discretion). "The purpose of limiting judicial review to the record before the agency is to guard against the courts using new evidence to 'convert the arbitrary and capricious standard into effectively de

novo review.'" *Id*. (quoting *Axiom Resource Mgmt. Inc. v. United States*, 564 F.3d 1374,1379-80 (Fed. Cir. 2009)). *Accord Camp v. Pitts*, 411 U.S. 138, 142 (1973).

"The proper standard of review for a motion to strike a document from an administrative record is the mirror image of the one that applies to motions to supplement the administrative record." *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 156, *aff'd*, 809 F.3d 590 (Fed. Cir. 2015); *PTC, Inc. v. United States*, 143 Fed. Cl. 770, 781 (2019). Supplementation of the administrative record is appropriate only upon a finding, supported by adequate rationale, that "the omission of [the] extra-record evidence precludes effective judicial review." *AgustaWestland*, 880 F.3d at 1331-32 (reversing trial court's decision to permit supplementation without supporting rationale); *Axiom*, 564 F.3d at 1380 (holding trial court abused its discretion in permitting supplementation without making determination that existing record is insufficient to permit meaningful review).

Accordingly, this Court regularly strikes declarations and other extra-record materials attached to a protester's filings. *See Kvichak Marine Indus., Inc. v. United States*, 118 Fed. Cl. 385, 388 (2014) ("Kvichak has established neither that the articles it submitted are properly the subject of judicial notice, nor that they are necessary for the court's review of this case…. the court finds that the information that Kvichak urges the court to consider is unnecessary, and therefore improper, to the court's review of this matter. "); *Command Mgmt. Servs., Inc. v. United States*, 111 Fed. Cl. 279, 285 n.5 (2013) ("the declarations referenced in the Government's August 24, 2012 Motion To Strike are not necessary for effective judicial review, because they were prepared only in connection with the litigation and were not part of the record before MICC when it awarded the contract nor before the GAO….").

V.      ARGUMENT

   A.   **Blue Origin Has Not Moved To Supplement The Record With Dr. Wilhite's Declaration And Cannot Meet The High Burden Required To Do So Here.**

Blue Origin specifically requested and briefed the Court on the record, which it never moved to supplement. Blue Origin's MJAR likewise offers no explanation or rationale for why the Court should supplement the record with the declaration of its paid consultant, Dr. Wilhite. Across fourteen pages, Dr. Wilhite substitutes his opinions for those of the NASA evaluators and the SSA, opining why he believes SpaceX's solution purportedly is a "poor fit for the HLS Option A mission" based on how he "understand[s] NASA's practice … in evaluating proposals," and erroneously contending—contrary to the Administrative Record documents and without foundation—that SpaceX allegedly did not propose to provide NASA with "critical technical and safety information" and what SpaceX's proposed price may be under Blue Origin's false narrative. (ECF 61-1 at A-23 to A-37.) This declaration is neither legally relevant nor factually accurate, and is not necessary to enable the Court to review the questions of law fundamental to Blue Origin's claims.

As SpaceX has demonstrated in previous filings, while the underlying solutions sought by NASA involve rocket science, each procurement error that Blue Origin alleges involves solicitation interpretation, questions of law that the Court will review based on "the plain language of the document." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). Specifically, Blue Origin premises its bid protest challenges on (i) the Flight Readiness Review ("FRR") and other milestone event instructions in the solicitation's Statement of Work, (ii) the authority the solicitation provided to the Contracting Officer to enter into post-selection negotiations with SpaceX and not with Blue Origin, and (iii) whether NASA's decision to make one award versus multiple awards was consistent with the solicitation. The

Administrative Record is more than sufficient for the Court to interpret the solicitation fully and effectively, and to determine whether it supports Blue Origin's contentions, without Dr. Wilhite's declaration.  Similarly, with regard to Blue Origin's various challenges to specific evaluation findings and the contract award decision, NASA's own evaluation is more than sufficient for the Court to determine whether NASA's determinations were rationally based.  Dr. Wilhite's re-evaluation is not only unnecessary, but also improper.

> As Judge Sweeney aptly noted in *Orion Technology, Inc. v. United States*:
>
> Consideration of an expert opinion directed solely at the propriety of the Army's decision, like the expert opinion here, risks improperly converting the court's more deferential undertaking into a de novo review…. Moreover, if the court cannot substitute its judgment for that of the agency, *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971), it would be nonsensical for it to consider or adopt an opinion from a putative expert attempting to accomplish the same thing, namely, substitute his judgment for that of the agency.

101 Fed. Cl. 492, 497 (2011) (internal citations omitted); *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 8 (2009) (striking paragraphs of declaration that purport to re-evaluate awardees' proposals stating that "admission of, or reliance upon this type of declaration evidence is precisely what the *Axiom* panel cautioned against").)  Similarly, here, because Dr. Wilhite's declaration is not necessary for meaningful judicial review of this matter, which principally turns on solicitation interpretation, and because Dr. Wilhite seeks to substitute his opinions about the merits of SpaceX's proposed solution for those of the SSA and NASA evaluators, the Court should strike Dr. Wilhite's declaration and Blue Origin's reliance on it.

> **B.      Blue Origin Has Not Moved To Supplement The Administrative Record Or This Court's Record With The Declarations Of Blue Origin's Executives, and These Declarations Contain Numerous Inadmissible Statements, Opinions, and Speculation Precluding Their Use For Any Judicial Fact Finding.**

Blue Origin also has not sought to supplement the Administrative Record or the Court's record with the declarations of its Chief Executive Officer (Mr. Smith) and its Senior Vice

President (Mr. Sherwood).  Blue Origin's MJAR likewise offers no explanation or rationale that permits the Court to consider these declarations as part of its record review, electing instead merely to submit and rely on them for its purported factual statement, and claimed prejudice and harms.  (ECF 61-1 at *passim*.)  The declarations contain numerous inadmissible statements.

Federal Rule of Evidence 602 prohibits a witness from testifying to matters unless "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.  The same holds true for an out-of-court declarant.  The declarant must have had an opportunity to observe the fact declared.  2 McCormick On Evid. § 10 (8th ed.).  Further, the law "prefers that a witness [or declarant] testify to facts, based on personal knowledge, rather than opinions inferred from facts." *Id.* §§ 10, 11.  Under Federal Rule of Evidence 701, a fact witness may not render an opinion unless the witness has first-hand knowledge of the subject about which the witness is testifying, the opinion is based on what the witness perceived, and the opinion is helpful to clearly understanding the witness's testimony or to determining a fact in issue.  Fed. R. Evid. 701.  Pursuant to Federal Rules of Evidence 1001, 1002, and 1004, except in narrow circumstances not present here, the contents of a document must be proven by the original document itself, not testimony of the contents of a document.  *See* 2 McCormick On Evid. §§ 231, 231, 237; *Bendix Corp. v. United States*, 220 Ct.Cl. 507, 600 F.2d 1364, 1371-72 (1979) ("It is well settled, under the best evidence rule, that in proving the contents of a document, the document itself must be produced....")

The majority of the statements in the declarations of Messrs. Smith and Sherwood fail these standards of admissible evidence or improperly seek to supplement the Administrative Record, or both.

1.      **Inadmissible and Irrelevant Statements in Mr. Smith's Declaration**

**Paragraph 3**: Mr. Smith's comments about Blue Origin's purported commitment to NASA's HLS mission, and his views about the Blue Origin team and proposal, are irrelevant to Blue Origin's arguments regarding prejudice or irreparable harm.  (ECF 61-1 at A-3.)  Also, the best evidence about Blue Origin's team and proposal is in the proposal and evaluation documents already included in the Administrative Record, not Mr. Smith's opinions.  Fed. R. Evid. 1001, 1002, 1004; 2 McCormick On Evid. §§ 231, 231, 237.  "The court's ability to engage in effective judicial review is not hindered by the absence of these statements."  *DataMill, Inc. v. United States*, 91 Fed. Cl. 722, 737 (2010) (striking sections of declaration that are irrelevant).

**Paragraph 5**:  Mr. Smith's description of the GAO decision and his comments about SpaceX's proposal are likewise inadmissible.  (ECF 61-1 at A-3.)  The GAO decision is in the record and Mr. Smith has no personal knowledge about SpaceX's proposal.  *DataMill*, 91 Fed. Cl. at 735  ("[A] witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others.").

**Paragraphs 7 through 9**:  In these paragraphs, Mr. Smith purports to reiterate the solicitation statement of work and the purpose of the reviews.  (ECF 61-1 at A-4 to A-5.)  The best evidence about those solicitation provisions is the solicitation itself.  *DataMill*, 91 Fed. Cl. at 737 ("The best evidence of the contents of the documents that constitute the agency-assembled administrative record are the documents themselves, not [the declarant's] interpretations thereof.").  Mr. Smith's declaration provides no foundation for his opinions about the purposes of the reviews and what any purported changes to those reviews may reflect, nor are such issues relevant to Blue Origin's allegations of prejudice or irreparable harm.  The Court should strike them as inadmissible lay opinion.

**Paragraphs 12-14, 16**: In Paragraph 13, Mr. Smith states that Blue Origin originally proposed the ▮▮▮▮▮ in its base period proposal, but then purportedly changed this approach based on the solicitation FRR and other milestone review instructions. (*Id.* at A-7 to A-8.) The best evidence of what Blue Origin proposed in its base period proposal is Blue Origin's base period proposal, not Mr. Smith's description of that proposal. Fed. R. Evid. 1001, 1002, 1004. If relevant to Blue Origin's claims, then Blue Origin should have moved to supplement the record with that proposal.[1] Similarly, in Paragraph 14, Mr. Smith contends that Blue Origin changed its initial HLS technical architecture during the base period execution ***in response to the Option A solicitation*** "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (ECF 61-1 at A-8.) But, again, the best evidence of what Blue Origin proposed in Option A is the Option A proposal already in the record, and the proposal contradicts Mr. Smith's declaration. Blue Origin's Option A proposal establishes that the architecture Blue Origin proposed for Option A also has a three element solution that was compatible ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮; and in order to meaningfully reduce launch vehicle schedule risk ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Blue Origin also made ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—an already existing flight proven vehicle:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] There is good reason to question this assertion, given that the standards Blue Origin was required to meet in the Option A evaluation were developed during and based upon its base period performance. (AR Tab 27, Option A BAA at 24443 (indicating that NASA "dispositioned and approved the final list of standards uniquely applicable" to each contractor's HLS solution, and requiring each offeror to "use these standards in preparing the Option A proposal.").)

10

(AR Tab 32a, BO Vol. I at 33345.)  And Blue Origin's business decision worked.  NASA assigned a strength to Blue Origin's architecture because it had the "flexibility to launch on multiple vehicles from multiple providers (including currently existing launch vehicles)."  (AR Tab 59a, Blue Origin SEP Report at 62635; *id*. at 62662-63.)

The Administrative Record shows that Blue Origin proposed its three element lander to ████████████████████████████████████████████████████████████████ ████████████████████████████ in the base period.  (AR Tab 9, HLS Overview at 267-68 (describing Blue Origin's base period concept (Ascent, Descent, and Transfer) with primary ██████████████████████████████████████████████████████████████████████). And, in its Option A proposal, Blue Origin has *continued* to propose that three element lander and ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████.  (AR Tab 108a.58, Blue Origin Vol. IV Att. 35 at 86357 ("████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████");[2] AR Tab 32a, BO Vol. I at 33346 ("████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████); *id*. at 33385 ("████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████").)  Blue Origin's Option A proposal touts the benefits of this multiple launch vehicle approach as ██████████████████████████████████

---

[2] SpaceX has cited to the version of Blue Origin's Proposal Vol. IV Attachment 35 in the GAO record because there appears to have been a copying error in the Court version of that proposal attachment. (*Compare* AR Tab 32d.185 *with* AR Tab 108a.58.)

██████████████████████████████████████████████████████████████████."

(AR Tab 32a, BO Vol. I at 33385.)

In Paragraph 12, Mr. Smith opines that Blue Origin "would have proposed an HLS concept designed to *take advantage of its New Glenn* heavy-lift large-fairing rocket *rather than the Blue Origin concept which was compatible with other, non-Blue Origin rockets (that had smaller fairing diameters than New Glenn)*."  (ECF 61-1 at A-7.)  But, as discussed, Blue Origin designed its three-element base period architecture requiring ██████████ ████████████████████████████, and its Option A proposal again has the same three element architecture ████████████████████████████████ ██████████████████████████.  (AR Tab 9, HLS Overview at 267-68 ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████; AR Tab 32a, BO Vol. I at 33346 ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████"); *see also* AR Tab 108a.106, Base Period Source Selection Statement at 91986 (noting that Blue Origin and its two primary partners will develop an element of the proposed lander.)  From his inaccurate representation that Blue Origin's proposed Option A architecture is not compatible with ██████████████████, Mr. Smith opines that some unexplained new architecture would have resulted in "major changes," "significant cost reductions," have "higher performance margins," and "increased technical capability." (ECF 61-1 at A-7.)  But Blue Origin offers no foundation for Mr. Smith's opinions and gives no concrete or contemporaneous factual details to permit the Court to find that Blue Origin's architecture would

12

have substantially changed, much less the basis for Mr. Smith's self-serving opinion that the changes would have reduced cost and prompted NASA evaluators to assign Blue Origin's proposal greater technical merit.

**Paragraph 15**:  Here, Mr. Smith describes Blue Origin's base period evaluation.  (*Id*. at A-8.)  Yet, the best evidence of Blue Origin's base period evaluation is the evaluation document itself.  Fed. R. Evid. 1001, 1002, 1004.  To the extent Blue Origin believed this document relevant to its prejudice claim, Blue Origin should have requested that NASA add these evaluation documents to the record or seek to add them itself.  It did neither.  Moreover, Mr. Smith's statements are focused on Blue Origin's choice of which *primary launch vehicle* to emphasize respectively in the base year and in the Option A proposal: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Blue Origin's Complaint, in contrast, alleges that had it understood the solicitation differently, then Blue Origin's Option A proposal would have presented an entirely different HLS lander, *i.e.*, a single element design versus the three-element architecture developed during the base period. (Compl. ¶¶ 26, 133.) And, as discussed, NASA credited Blue Origin with a strength in the Option A competition for its three-element architecture's capability "to launch on multiple vehicles from multiple providers (including currently existing launch vehicles)."  (AR Tab 59a, Blue Origin SEP Report at 62635; *id*. at 62662-63.)  In short, in this paragraph, Mr. Smith does not address, much less substantiate, the alleged prejudice.

**Paragraphs 17 through 20**:   Blue Origin offers no foundation for Mr. Smith's lay opinion about how NASA would have evaluated Blue Origin's purported and undescribed "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" or how offering launch services ▇▇▇▇▇▇▇▇▇▇▇▇

███████ a corporate contribution would have "significantly lowered its price and positively impacted Blue origin's evaluation scores." (ECF 61-1 A-9 to A-10.)[3]

**Paragraph 24**: Mr. Smith's statements about how Blue Origin and the National Team reduced their original price in the base year is irrelevant to whether the SSA rationally determined not to engage in post-selection discussions or negotiations with Blue Origin in the Option A procurement.[4] Mr. Smith's opinion that NASA "unfairly chose to not consider or enter into any discussions" with Blue Origin is inadmissible lay opinion. (*Id.* at A-11.)

**Paragraph 25**: Mr. Smith's conclusion is argumentative and inadmissible lay opinion that seeks to substitute Mr. Smith's view for the Court's judgment. (*Id.* at A-11 to A-12.)

> 2. **Inadmissible and Irrelevant Statements in Mr. Sherwood's Declaration**

**Paragraphs 2 through 5**: In these paragraphs, Mr. Sherwood purports to reiterate solicitation provisions about the milestone reviews, the purpose of the reviews, and GAO's holding. (*Id.* at A-14 to A-15.) The Administrative Record already includes the solicitation and the GAO decision, as well as Blue Origin's proposal. Mr. Smith's opinions in these paragraphs do not go to the issues of prejudice or harm, but rather are an attempt to bolster Blue Origin's

---

[3] The record also contradicts Mr. Smith's statements. For instance, as noted, Blue Origin received a strength, not a weakness, because it has ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████" (*Compare* AR Tab 59a, Blue Origin SEP Report at 62662.) It is unclear how Blue Origin would have obviated the significant weakness ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (*Id.* at 62652.) Mr. Smith offers no facts to support his re-evaluation.

[4] The record also contradicts this assertion. Mr. Smith contends Blue Origin reduced its base year proposal price by 46% to accommodate NASA's budget needs in the base period of performance. (ECF 61-1 at A-11.) The Contracting Officer, however, reported to GAO that during the base period price negotiations, Blue Origin discounted its price by "roughly 35%". (AR Tab 108b26a, COSF at 103654.)

14

(flawed) solicitation interpretation.  "The court's ability to engage in effective judicial review is not hindered by the absence of these statements." *DataMill, Inc.*, 91 Fed. Cl. at 737.

**Paragraphs 6:**  Mr. Sherwood's expresses an impermissible legal conclusion.

**Paragraph 7:**  Blue Origin gives no foundation for Mr. Sherwood's purported opinion that Blue Origin selected its teammates based on the FRR instruction in the Option A solicitation.  The Administrative Record contradicts the statements, showing that Blue Origin proposed these same team members in its base period proposal (and received a strength for their demonstrated experience).  (AR Tab 108a.106, Base Period Source Selection Statement at 91986.)

**Paragraph 8:**  Mr. Sherwood's opinions are inadmissible for the same reasons that Mr. Smith's opinions in paragraph 12-14 and paragraphs 17-18 of his declaration are inadmissible. Blue Origin offers no foundation for Mr. Sherwood's opinion that Blue Origin "would have proposed an HLS concept designed to take full advantage ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a concept compatible with existing rockets." (ECF 61-1 at A-16 to A-17.)  Instead, the record contradicts the statement, showing that, in the base period, Blue Origin designed its three element architecture ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, and then for Option A proposed again a three element architecture ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (*Compare* AR Tab 9, HLS Overview at 267-68 *with* AR Tab 32a, BO Vol. I at 33345.)  Blue Origin also offers no foundation for Mr. Sherwood's opinions and gives no concrete factual details to permit the Court to find that Blue Origin's architecture would change, much less the basis for Mr. Sherwood's self-serving opinion that a completely new architecture would have enabled Blue Origin to "receive[]

15

higher technical and management ratings" and to propose a "more capable, low-cost launch system." (*Id.* at A-17.)

**Paragraphs 9 and 10:**  Mr. Sherwood's statements are argumentative opinion aimed at the merits of Blue Origin's protest arguments and not any factual statements about Blue Origin's purported prejudice. (*Id.* at A-18 to A-19.)

**Paragraph 11:**  Blue Origin offers no foundation for Mr. Sherwood's lay opinion about how offering launch services ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a corporate contribution would have "significantly lower[ed] cost to NASA." (*Id*. at A-18.)

## VI.   CONCLUSION

Because Blue Origin has not properly sought to supplement, and could not make the legal showing necessary to do so here, SpaceX respectfully requests that the Court strike or not consider the declarations attached to Blue Origin's MJAR and strike the statements in Blue Origin's MJAR that rely on those statements.  And, given the volume of record facts contradicting Blue Origin's theory that it could have submitted a viable alternative proposal with substantial chance for award (ECF 62 at 32-38, ECF 60 at 43-46), Blue Origin should not be permitted to expand the factual record on this point with unsubstantiated, unexamined, irrelevant and legally inadmissible out-of-court statements.

Dated:   October 13, 2021

*Of Counsel:*
Mark D. Colley
Nathaniel E. Castellano
Thomas A. Pettit
Aime JH Joo
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Respectfully submitted,
ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Kara L. Daniels
Kara L. Daniels
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone:  (202) 942-5768
Fax:  (202) 942-5999
*Attorney of Record for Space Exploration Technologies Corp.*

16